677 N.E.2d 920 (1997)
175 Ill.2d 471
222 Ill.Dec. 386
In re S.G. et al., Minors (The People of the State of Illinois, Appellant,
v.
Pearlie G., Appellee).
No. 80688.
Supreme Court of Illinois.
February 20, 1997.
Rehearing Denied March 31, 1997.
*921 James E. Ryan, Attorney General, Springfield, Jack O'Malley and Richard A. Devine, State's Attorneys, Chicago (Arleen C. Anderson, Assistant Attorney General, Chicago, Renee Goldfarb, Kenneth T. McCurry and Tyra Taylor-Bell, Assistant State's Attorneys, of counsel), for the People.
Patrick T. Murphy, Public Guardian of Cook County (Lee Ann Lowder and Susan S. Wigoda, of counsel), Chicago, for S.G., W.G., C.G. and K.G.
Rita A. Fry, Public Defender (Cheryl K. Lipton, Assistant Public Defender, of counsel), Chicago, for Pearlie G.
Justice NICKELS delivered the opinion of the court:
In this appeal, we decide whether section 2-14 of the Juvenile Court Act of 1987 (705 ILCS 405/2-14 (West 1994)) requires that the circuit court dismiss a petition for adjudication of wardship where the adjudicatory hearing is not completed within the statutory time period. The State filed petitions for adjudication of wardship in the circuit court of Cook County alleging that each of Pearlie G.'s three daughters S.G., W.G. and C.G., and her son K.G. were abused and neglected. Pearlie filed a motion to dismiss the petitions, alleging that the statutory time period for an adjudicatory hearing on those petitions had expired. The circuit court denied Pearlie's motion to dismiss, finding that the dismissal of the petitions would not be in the best interest of the children. The circuit court subsequently adjudicated the four children wards of the court and Pearlie appealed. The appellate court reversed the adjudication of wardship. 277 Ill.App.3d 803, 214 Ill.Dec. 583, 661 N.E.2d 437. The appellate court determined that the plain language of section 2-14 requires the dismissal of a petition where the adjudicatory hearing is not completed within the statutory time period. *922 We granted the State's petition for leave to appeal. 155 Ill.2d R. 315. We affirm.

I. BACKGROUND
On February 27, 1991, the Illinois Department of Children and Family Services (DCFS) investigated a report that Pearlie's boyfriend had sexually abused her daughter W.G. DCFS found evidence to support the report, but did not bring the family to the attention of the juvenile court. W.G. eventually recanted her allegations against the boyfriend, claiming that she fabricated the charges because she did not like the boyfriend and wished to estrange him from her mother.
On April 21, 1992, the Chicago police department began investigating reports of abuse that Pearlie's son, K.G., made to the DCFS hot line. In these, K.G. reported that his mother had been sexually abusing him. S.G. reported that she witnessed one of the incidents of sexual abuse between K.G. and their mother. Pearlie was arrested and charged with aggravated criminal sexual assault. In the following days, both K.G. and S.G. recanted their allegations against Pearlie.
On April 28, 1992, the State's Attorney's office, on behalf of DCFS, filed separate petitions for adjudication of wardship for each of Pearlie's four children. The petitions alleged that there was sexual abuse in the home and that the children were neglected in that their environment was injurious to their welfare. Also on April 28, 1992, the public guardian's office was appointed to represent the children and the first of two temporary custody hearings was held. See 705 ILCS 405/2-10 (West 1994).
At the first temporary custody hearing, Donna Hendricks from DCFS testified concerning both Pearlie's boyfriend's reported abuse of W.G. and Pearlie's reported abuse of K.G. Pearlie did not attend the hearing because she was incarcerated at this time on the charges of sexually abusing K.G. The trial judge found probable cause for the charges of abuse and neglect and further determined that it was in the best interest of the children to name a temporary custodian to place them.
After being released, Pearlie was granted a second custody hearing where she was represented by the public defender's office. The second temporary custody hearing was held on June 22 and June 23, 1992. At this hearing, Assistant State's Attorney Adam Grosch testified that K.G. reported being forced by his mother to engage in sexual activity on two occasions. Grosch also testified that S.G. corroborated K.G.'s account of the abuse.
W.G. also testified at the hearing. W.G. testified that she had fabricated the story of abuse by her mother's boyfriend because she disliked him and wished to prevent her mother's continued involvement with him. W.G. further testified that she believed that her accusation gave K.G. the idea to accuse their mother. K.G. declined to testify at the hearing. The trial judge declined to change his finding that there was probable cause for the charges and upheld his decision to award temporary custody of the children to DCFS.
At a hearing held on September 1, 1992, the circuit court entered orders of default against the respondent fathers who had been served by publication but failed to appear. At a hearing held on September 3, 1992, the trial judge and the attorneys for the parties acknowledged that the defaulting of the fathers on September 1 began the 90-day speedy-trial provision contained in section 2-14. The trial judge and the parties agreed that the adjudicatory hearing must therefore be held by November 30, 1992, and the trial judge set November 10 as the date for the adjudicatory hearing.
Also at the September 3 hearing, the trial judge granted the public guardian's motion to withdraw his representation of W.G. Attorney Mary Bird from the Legal Assistance Foundation then entered her appearance and was appointed guardian ad litem for W.G. The public guardian's office continued its representation of the remaining siblings.
On October 22, 1992, the assistant public guardian representing the three remaining siblings requested a continuance because she required surgery and would therefore be unavailable for the November 10 trial date. The trial judge recognized that the 90-day *923 term was set to expire at the end of November, but he lamented that because of his crowded docket there was no other available court time to hold the hearing prior to the end of that term. The judge thereupon found that a continuance was in the best interest of the children and reset the adjudicatory hearing for December 15, 1992. Presumably the court was acting pursuant to section 2-14(c) of the Juvenile Court Act (705 ILCS 405/2-14(c) (West 1994)), which allows for one 30-day continuance of the 90-day statutory period.
On December 15, 1992, the circuit court first held a pretrial hearing to dispose of several motions. Among them, the court granted W.G.'s motion to be returned to the custody of her mother under an order of protection. Thereafter, the court heard opening statements from all parties and the testimony of one witness, Robert O'Connor, who is an investigator with DCFS. After this sole witness, the court adjourned the hearing and sought to schedule the remaining court time necessary to conclude the adjudicatory hearing.
In trying to schedule the remaining time necessary for the adjudicatory hearing, the trial judge was cognizant that the statutory deadline was approaching. The judge noted that it was "very unlikely" that the case could be completed by that time because of the busy court calendar. A discussion concerning scheduling was then conducted off the record. The trial judge thereafter offered the parties the choice to either hear the case on a piecemeal basis after the regular call each day when time was available, or to schedule the case in a block of time in February. Pearlie's attorney requested that the case proceed immediately on a piecemeal basis. The trial judge ordered that the case proceed on a piecemeal basis starting on December 17, 1992.
On December 17, the court did not have enough time at the end of the call to take any evidence. However, time was devoted to a motion filed that day by W.G.'s attorney seeking to disqualify the public guardian's office from representing the remaining siblings. The motion alleged that the public guardian's representation of the remaining siblings presented a conflict of interest with W.G., a former client. The trial judge ordered a briefing schedule and the matter was continued for a hearing to be conducted on January 11, 1993.
On January 11, 1993, the court denied the motion to disqualify the public guardian's office, ruling that any further delays in the matter would not be in the best interest of the children. The court then again offered to hear the case on a piecemeal basis or alternatively to schedule the case in a block at some future time. A scheduling conference was again held off the record. The court scheduled the adjudicatory hearing to continue on March 8.
Pearlie's attorney subsequently filed a motion to dismiss the petitions for adjudication of wardship for all the children. The motion alleged that the petitions must be dismissed pursuant to the speedy-trial provisions contained in section 2-14 of the Juvenile Court Act. Section 2-14 provides that an adjudicatory hearing shall be held within 90 days of service of process, except that one 30-day continuance may be granted for good cause. 705 ILCS 405/2-14 (West 1994). Section 2-14 provides that, where the adjudicatory hearing is not timely held, the petition "shall be dismissed without prejudice." 705 ILCS 405/2-14(c) (West 1994).
Prior to resuming the adjudicatory hearing on March 8, the court ruled on the motion to dismiss the petitions. The judge did not dispute that the statutory time period for an adjudicatory hearing had expired, but denied the motion because he found that the dismissal of the petitions would not be in the best interest of the minors. The adjudicatory hearing was then conducted over the next several days, concluding on March 12.
At the conclusion of the hearing, the court found that all the children were neglected because their environment was injurious to their welfare. The court further found that W.G. had been sexually abused, but the court ruled that the evidence failed to establish that K.G. had been sexually abused. At a dispositional hearing held on April 12, the court adjudged the children wards of the court. The court found that it was in the *924 best interest of W.G., S.G. and C.G. to be placed in the custody of their mother under an order of protection. The court further held that K.G. should remain in the custody of DCFS.
Pearlie appealed from the adjudication of wardship. The appellate court reversed. 277 Ill.App.3d 803, 214 Ill.Dec. 583, 661 N.E.2d 437. The appellate court concluded that the plain language of section 2-14 requires the dismissal without prejudice of any petition in which the adjudicatory hearing is not completed within the statutory time period. 277 Ill.App.3d at 809, 214 Ill.Dec. 583, 661 N.E.2d 437. The appellate court rejected the State's argument that section 2-14 merely requires that the hearing begin, but not finish, prior to the statutory time limit. 277 Ill.App.3d at 809, 214 Ill.Dec. 583, 661 N.E.2d 437.
We granted the State's petition for leave to appeal (155 Ill.2d R. 315). The public guardian's office, representing S.G., C.G. and K.G., has also filed a brief in opposition to the appellate court's construction of section 2-14. The public defender's office represents Pearlie as appellee. W.G. is not a party to this appeal.

II. ANALYSIS
The State first argues that the appellate court's construction of section 2-14 violates the separation of powers provision of the Illinois Constitution of 1970 (Ill. Const. 1970, art. II, § 1) by invading the inherent powers of the court to protect children. The State also argues that the appellate court erred in giving section 2-14 a mandatory construction and in requiring that the adjudicatory hearing be completed, rather than commenced, within the statutory time period. The public guardian's office argues that Pearlie's counsel waived her statutory right to a prompt adjudicatory hearing by agreeing to the delays. The public guardian's office also argues that the motion filed by W.G.'s attorney to disqualify the public guardian's office tolled the statutory time period.
A court should avoid constitutional questions where the case may be decided on other grounds. Bonaguro v. County Officers Electoral Board, 158 Ill.2d 391, 396, 199 Ill. Dec. 659, 634 N.E.2d 712 (1994). We therefore find it appropriate to first address whether as a matter of statutory construction the legislature intended for section 2-14 to require the mandatory dismissal of a petition where the adjudicatory hearing is not timely. We next address whether Pearlie waived her right to a prompt adjudicatory hearing and whether the motion seeking to disqualify the public guardian's office tolled the statutory time period. As we find it necessary, we conclude by addressing whether the mandatory dismissal of a petition pursuant to section 2-14 violates the constitutional principle of separation of powers.

A. Statutory Construction
In interpreting a statute, our objective is to ascertain and give effect to the intent of the legislature. Hernon v. E.W. Corrigan Construction Co., 149 Ill.2d 190, 194, 172 Ill.Dec. 200, 595 N.E.2d 561 (1992). The most reliable indicator of legislative intent is the language of the statute. People v. Bryant, 128 Ill.2d 448, 455, 132 Ill.Dec. 415, 539 N.E.2d 1221 (1989). Section 2-14 of the Juvenile Court Act provides:
"(a) Purpose and policy. The legislature recognizes that serious delay in the adjudication of abuse, neglect, or dependency cases can cause grave harm to the minor and the family and that it frustrates the best interests of the minor and the effort to establish permanent homes for children in need. The purpose of this Section is to insure that * * * the State of Illinois will act in a just and speedy manner to determine the best interests of the minor * * *.
(b) When a petition is filed alleging that the minor is abused, neglected or dependent, an adjudicatory hearing shall be held within 90 days of the date of service of process upon the minor, parents, any guardian and any legal custodian.
(c) Upon written motion of a party filed no later than 10 days prior to hearing, or upon the court's own motion and only for good cause shown, the Court may continue the hearing for a period not to exceed 30 days, and only if the continuance is in the *925 best interests of the minor. When the court grants a continuance, it shall enter specific factual findings to support its order, including factual findings supporting the court's determination that the continuance is in the best interests of the minor. Only one such continuance shall be granted. A period of continuance for good cause as described in this Section shall temporarily suspend as to all parties, for the time of the delay, the period within which a hearing must be held. On the day of the expiration of the delay, the period shall continue at the point at which it was suspended.
The term `good cause' as applied in this Section shall be strictly construed and be in accordance with Supreme Court Rule 231(a) through (f). Neither stipulation by counsel nor the convenience of any party constitutes good cause. If the adjudicatory hearing is not heard within the time limits required by subsection (b) or (c) of this Section, upon motion by any party the petition shall be dismissed without prejudice.
(d) The time limits of this Section may be waived only by consent of all parties and approval by the court." 705 ILCS 405/2-14 (West 1994).
The State notes that in the context of the Juvenile Court Act this court has interpreted the term "shall" as directory, rather than mandatory. In In re Armour, 59 Ill.2d 102, 319 N.E.2d 496 (1974), this court construed a provision requiring that a petition "shall be set for an adjudicatory hearing within 30 days" (Ill.Rev.Stat.1971, ch. 37, par. 704-2). This court concluded that the legislature did not intend a mandatory construction of the statute. In re Armour, 59 Ill.2d at 105, 319 N.E.2d 496. In so finding, this court reasoned that dismissing a petition would not further the goals of the Juvenile Court Act to rehabilitate and protect minors. In re Armour, 59 Ill.2d at 104, 319 N.E.2d 496. In addition, the court concluded that the language of the statute did not evince the legislative intent necessary for a mandatory construction. The court reasoned that unlike the familiar criminal speedy-trial provision, the legislature did not include a consequence for the failure to set the adjudicatory hearing within the time period. In re Armour, 59 Ill.2d at 105, 319 N.E.2d 496.
The provision at issue in In re Armour is readily distinguishable from section 2-14. Section 2-14 contains an explicit statement of policy that delay can cause grave harm to minors. 705 ILCS 405/2-14(a) (West 1994). Section 2-14 also gives explicit directions on how the time period is to be calculated and the manner of granting continuances. 705 ILCS 405/2-14(c) (West 1994). More importantly, section 2-14 provides for the dismissal without prejudice of any petition where an adjudicatory hearing is not timely held. 705 ILCS 405/2-14(c) (West 1994); see also People v. Porter, 122 Ill.2d 64, 85, 118 Ill.Dec. 465, 521 N.E.2d 1158 (1988) (finding that a mandatory construction is indicated where statute prescribes the result that will occur if the specified procedure is not followed). For these reasons, we find that the legislature intended a mandatory construction of section 2-14.
The State also argues that the appellate court erred in construing section 2-14 to require that the adjudicatory hearing be completed, rather than commenced, within the statutory time period. The State argues that section 2-14 should be interpreted similarly to the speedy-trial provision in the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5 (West 1994)), which has been interpreted to require only that the proceeding begin before the expiration of the statutory time period. See People v. Williams, 59 Ill.2d 402, 405, 320 N.E.2d 849 (1974). The State argues that any contrary interpretation would provide an incentive for the parties to simply delay the proceedings to obtain a dismissal.
We reject the State's interpretation. We agree with the appellate court that section 2-14 requires adjudicatory hearings be completed prior to the statutory deadline. The legislature used the phrase "shall be held within 90 days" rather than "shall begin" or "shall commence" within 90 days. In addition, section 2-14(c) further provides that "[i]f the adjudicatory hearing is not heard within the time limits * * * the petition shall be dismissed without prejudice." (Emphasis *926 added.) 705 ILCS 405/2-14(c) (West 1994). This perfective language supports the view that the legislature intended for adjudicatory hearings to be completed prior to the statutory deadline.
Our conclusion based upon the plain language of section 2-14 is buttressed by the history of the provision. A prior scheduling provision required that petitions for adjudication of wardship "shall be set for an adjudicatory hearing within 30 days." Ill.Rev.Stat. 1983, ch. 37, par. 704-2. The legislature specifically changed the language of the scheduling provision from requiring that a hearing "shall be set" to requiring that the hearing "shall be held" within the statutory time period. Presumably, this change reflects a legislative desire to actually require that adjudicatory hearings be completed within the statutory time period, rather than simply started.
This conclusion is also consistent with the stated purpose of the statute to "insure" the speedy resolution of abuse and neglect cases. If we allowed a technical start of the hearing followed by an indeterminate period of delay to satisfy section 2-14, the statutory protection could be easily circumvented and timeliness would not be guaranteed. Indeed, the hearing in the present case was delayed for an additional three months after the start of the hearing on December 15. We are also confident that the trial judge can exercise sufficient control over the proceedings to prevent a party from obtaining a dismissal through purposeful delay. We therefore hold that the legislature intended a mandatory construction of section 2-14 and that the adjudicatory hearing must be completed within the statutory period.

B. Application and Waiver
Applying the statute, the adjudicatory hearing was not timely. Section 2-14 provides that the 90-day statutory time period begins on the date of service of process. 705 ILCS 405/2-14(b) (West 1994). We therefore take the default entered against the absent fathers on September 1, 1992, as the starting date for the 90-day statutory period. Fifty-one days had elapsed when the public guardian's office was granted a continuance on October 22, which we will assume satisfied the requirements for a continuance pursuant to section 2-14(c). Section 2-14(c) provides that upon the expiration of the 30-day continuance, the 90-day period shall continue at the point at which it was suspended. 705 ILCS 405/2-14(c) (West 1994). Thus, 30 days later on November 21, 1992, the time again began to run on the 90-day time period, starting at 51 days. The 90-day period therefore expired 39 days later on December 30, 1992. The hearing, however, was not concluded until March 12, 1993, well beyond the statutory period.
The public guardian's office argues that the adjudicatory hearing need not have been held within the statutory period because Pearlie waived her right to a prompt adjudicatory hearing. See 705 ILCS 405/2-14(d) (West 1994). The public guardian initially argues that Pearlie waived her right to a prompt hearing after the hearing first commenced on December 15, 1992, by agreeing to have the case heard thereafter on a piecemeal basis. The public guardian further argues that Pearlie again waived her right to a prompt hearing on January 11, 1993, by declining the judge's offer to hear the case on a piecemeal basis and instead requesting a set block of time at a future date.
The public guardian's waiver arguments represent a brazen distortion of the record. Throughout the entire proceedings, Pearlie's attorney repeatedly voiced Pearlie's frustration at the slow pace of the proceedings and her desire for a quick completion. After the beginning of the adjudicatory hearing on December 15, the court gave the parties the option either to have the case heard on a piecemeal basis at the end of the call each day or to schedule the case for a block of time in February. When Pearlie's attorney pressed the court on the scheduling issue, the court explicitly responded that if he was unwilling to waive the 90-day period and have the case scheduled at a remote time, then he must accept the prospect of having the case proceed "bit by bit." Pearlie's attorney responded that he would agree to have the case heard "bit by bit." In agreeing to having the case heard when time was available, Pearlie was exercising her statutory right to a prompt hearing, not waiving it.
*927 The public guardian further argues that Pearlie again waived her right to a prompt hearing on January 11, 1993, by agreeing to have the case heard in a block of available time in March. In its effort to manufacture waiver, the public guardian's office again distorts the record. At no time during the January 11 hearing did the court or the parties even discuss a waiver of the statutory time period. Indeed, Pearlie's attorney at first rejected both hearing the case immediately on a piecemeal basis and hearing the case at a later block of time, suggesting instead that the court reschedule other cases and fit the case in the call over the next week or two. After hearing from the parties, the court ruled that the case would proceed in March when the court had a block of time available in its busy call. Our review of the record thoroughly undermines the contention that Pearlie ever waived her statutory right to a timely hearing.
Last, the public guardian argues that the motion filed by W.G.'s attorney to disqualify the public guardian's office tolled the statutory time period. The public guardian notes that in addition to the speedy-trial provision, a statutory right to counsel exists in the Juvenile Court Act (705 ILCS 405/1-5 (West 1994)). The public guardian reasons that the circuit court acted properly in balancing the competing statutory policies by resolving the representation issue prior to continuing the hearing.
Section 2-14 provides no support for the public guardian's contention that resolving issues surrounding the children's representation should toll the statutory time period. Section 2-14 provides that only one 30-day continuance of the proceedings is to be granted. 705 ILCS 405/2-14(c) (West 1994). We decline to read any exceptions into the clear statutory language requiring that adjudicatory hearings be held within the statutory time period.

C. Separation of Powers
The State argues that a mandatory construction of section 2-14 which requires the dismissal of a petition for adjudication of wardship violates the separation of powers provision of our constitution. Ill. Const. 1970, art. II, § 1. According to the State, the judiciary possesses the inherent plenary authority under the doctrine of parens patriae to act in the best interest of minors which cannot be taken away by statute. Therefore, the State argues that the legislature may not require the dismissal of a petition for adjudication of wardship on timeliness grounds where the circuit court decides that such a dismissal is not in the best interest of the minor.
At the outset, we note that "a strong presumption of constitutionality attaches to any legislative enactment and that the burden rests upon the challenger to demonstrate its invalidity." Sanelli v. Glenview State Bank, 108 Ill.2d 1, 20, 90 Ill.Dec. 908, 483 N.E.2d 226 (1985). The separation of powers provision of the Illinois Constitution, contained in section 1 of article II, provides:
"The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1.
Section 1 of article VI further provides:
"The judicial power is vested in a Supreme Court, an Appellate Court and Circuit Courts." Ill. Const. 1970, art. VI, § 1.
The separation of powers provision does not seek to achieve a complete divorce between the branches of government. Strukoff v. Strukoff, 76 Ill.2d 53, 58, 27 Ill.Dec. 762, 389 N.E.2d 1170 (1979). Neither does the provision require the "division of governmental powers into rigid, mutually exclusive compartments." People v. Walker, 119 Ill.2d 465, 473, 116 Ill.Dec. 675, 519 N.E.2d 890 (1988). Inevitably, there are areas in which separate spheres of governmental authority overlap and certain functions are thereby shared. Walker, 119 Ill.2d at 473, 116 Ill. Dec. 675, 519 N.E.2d 890. Ultimately, the purpose of the provision is to prevent the whole power of two or more branches from residing in the same hands. Knuepfer v. Fawell, 96 Ill.2d 284, 292, 70 Ill.Dec. 708, 449 N.E.2d 1312 (1983); Walker, 119 Ill.2d at 473, 116 Ill.Dec. 675, 519 N.E.2d 890.
The constitution does not define the exact nature of the different governmental powers. However, this court has sketched the judicial *928 power as including the adjudication and application of law and the procedural administration of the courts. People v. Bainter, 126 Ill.2d 292, 302-03, 127 Ill.Dec. 938, 533 N.E.2d 1066 (1989); DeLuna v. St. Elizabeth's Hospital, 147 Ill.2d 57, 68, 167 Ill.Dec. 1009, 588 N.E.2d 1139 (1992). Where matters of procedure are at issue, this court has noted that the constitutional authority to promulgate procedural rules can be concurrent between the court and the legislature. O'Connell v. St. Francis Hospital, 112 Ill.2d 273, 281, 97 Ill.Dec. 449, 492 N.E.2d 1322 (1986); Strukoff, 76 Ill.2d at 61, 27 Ill.Dec. 762, 389 N.E.2d 1170; People v. Cox, 82 Ill.2d 268, 274, 45 Ill.Dec. 190, 412 N.E.2d 541 (1980). In determining whether a legislative enactment pertaining to judicial practice or procedure is constitutional, this court has looked to whether the statute conflicts with any court rules or unduly infringes on inherent judicial powers. Bainter, 126 Ill.2d at 302-03, 127 Ill.Dec. 938, 533 N.E.2d 1066; Walker, 119 Ill.2d at 474, 116 Ill.Dec. 675, 519 N.E.2d 890; Cox, 82 Ill.2d at 274, 45 Ill.Dec. 190, 412 N.E.2d 541.
The State does not suggest that section 2-14 conflicts with a supreme court rule. Cf. Cox, 82 Ill.2d at 274, 45 Ill.Dec. 190, 412 N.E.2d 541 ("where a rule of this court on a matter within the court's authority and a statute on the same subject conflict, the rule will prevail"). Instead, the State argues that in requiring the dismissal of a petition on timeliness grounds, section 2-14 unduly infringes on the inherent powers of the court in its role as parens patriae to protect children.
The doctrine of parens patriae refers to duty of the government to care for infants, the insane and the infirm. County of McLean v. Humphreys, 104 Ill. 378, 383 (1882). In order to satisfy this duty, the English courts of chancery became imbued with the jurisdiction to act on the behalf of those unable to care for themselves. "The source of this jurisdiction is quite uncertain" and it is unclear "[w]hether the power was originally a mere usurpation, or was legally delegated to the chancellor by the crown as parens patriae, or grew out of the practice of appointing guardians ad litem." Thomas v. Thomas, 250 Ill. 354, 364-65, 95 N.E. 345 (1911). In any event, this doctrine exists in our courts by its inheritance from the English courts of chancery, and this court has recognized that it provides the authority to appoint guardians independent of any authority granted by the legislature. In re M.M., 156 Ill.2d 53, 63, 189 Ill.Dec. 1, 619 N.E.2d 702 (1993).
Neither the doctrine of parens patriae nor our inherent guardianship powers provide a basis to judicially invalidate section 2-14. The doctrine of parens patriae is not solely a grant of jurisdiction to the courts, but represents an expression of the general power and obligation of the government as a whole to protect minors and the infirm. People ex rel. Pauling v. Misevic, 32 Ill.2d 11, 14, 203 N.E.2d 393 (1964); People ex rel. Wallace v. Labrenz, 411 Ill. 618, 623-24, 104 N.E.2d 769 (1952). For this reason, each branch of government has concurrent powers and responsibilities that are in the nature of parens patriae. Although our courts possess some powers that are in the nature of parens patriae, that doctrine does not represent an independent judicial power to strike down legislation on grounds that it violates "the best interest of the child."
This court has also rejected the State's contention that because the Juvenile Court Act is merely a codification of our court's inherent parens patriae authority, a circuit court retains its equitable powers and may exercise them in contravention of the statute. In People ex rel. Carey v. White, 65 Ill.2d 193, 2 Ill.Dec. 345, 357 N.E.2d 512 (1976), the trial judge, responding to a writ of mandamus, argued that because the Juvenile Court Act represents a codification of the inherent parens patriae power, he may exercise the traditional equitable power to impanel an advisory jury for the proceedings. White, 65 Ill.2d at 202, 2 Ill.Dec. 345, 357 N.E.2d 512. This court rejected that view and held that the trial court could not exercise its equitable powers contrary to the parameters outlined by the legislature. White, 65 Ill.2d at 202, 2 Ill.Dec. 345, 357 N.E.2d 512.
This court has also rejected a broad construction of the inherent guardianship powers our courts possess. In In re M.M., 156 Ill.2d 53, 189 Ill.Dec. 1, 619 N.E.2d 702 *929 (1993), this court was presented with several cases where the trial judge sought to impose restrictions on a guardian's power to consent to an adoption. In each case, the trial judge found that it was in the child's best interest to retain contact with his or her biological parents. Therefore, the trial judges attempted to limit the guardian's consent to an adoption to instances where the adoptive parents had agreed to keep the child in contact with his or her biological parents.
In rejecting this practice, this court acknowledged that the circuit court possesses the "inherent plenary power to appoint guardians of minors independent of any authority given to the courts by the legislature." In re M.M., 156 Ill.2d at 63, 189 Ill.Dec. 1, 619 N.E.2d 702. However, this court refused to give that power a broad construction because at common law the court's inherent guardianship power did not include the power to consent to an adoption. In re M.M., 156 Ill.2d at 63-66, 189 Ill.Dec. 1, 619 N.E.2d 702. Furthermore, this court reasoned that a court may not seize upon "the best interest of the child mandate" to enlarge its statutory powers. In re M.M., 156 Ill.2d at 69-70, 189 Ill.Dec. 1, 619 N.E.2d 702.
More importantly, this court has directly upheld the Juvenile Court Act against challenges that it invades the court's guardianship powers. In People ex rel. Houghland v. Leonard, 415 Ill. 135, 112 N.E.2d 697 (1953), the petitioner in a habeas corpus action challenged the constitutional validity of the Juvenile Court Act on grounds that it infringed on the court's guardianship authority. Leonard, 415 Ill. at 138, 112 N.E.2d 697. This court rejected that view and held that the Juvenile Court Act represents a broad legislative expression of public policy that goes beyond the equitable jurisdiction of courts to appoint guardians. Leonard, 415 Ill. at 139, 112 N.E.2d 697.
The responsibility to protect children rests upon all three branches of government, which have separate functions under our constitution. In order that our governmental system operate in harmony where functions are shared between branches, we have understood the "necessity to exercise sparingly the inherent powers of the judiciary" and recognized that "deference should normally be accorded the governmental branch having initial responsibility." Knuepfer, 96 Ill.2d at 293, 70 Ill.Dec. 708, 449 N.E.2d 1312. The initial responsibility for setting public policy relating to the care and custody of minors rests with the legislative branch of government. For this reason, this court has routinely deferred to the legislature by acknowledging that the Juvenile Court Act is "a purely statutory creature whose parameters and application are defined solely by the legislature." See People v. P.H., 145 Ill.2d 209, 223, 164 Ill.Dec. 137, 582 N.E.2d 700 (1991); In re M.M., 156 Ill.2d at 66, 189 Ill.Dec. 1, 619 N.E.2d 702.
Consistent with this view, this court has rejected challenges that provisions in the Juvenile Court Act violate principles of separation of powers. For example, this court held that the legislature can mandate the removal of a petition for adjudication of wardship from the juvenile to the criminal court. See P.H., 145 Ill.2d at 221-24, 164 Ill.Dec. 137, 582 N.E.2d 700. In addition, this court has held that the legislature may require mandatory sentences of confinement for juveniles. See People ex rel. Carey v. Chrastka, 83 Ill.2d 67, 78-79, 46 Ill.Dec. 156, 413 N.E.2d 1269 (1980). In so holding, this court reasoned that these provisions do not infringe on any inherent judicial power because they merely define and implement a statutorily created remedy. P.H., 145 Ill.2d at 224, 164 Ill.Dec. 137, 582 N.E.2d 700. Chrastka, 83 Ill.2d at 80, 46 Ill.Dec. 156, 413 N.E.2d 1269.
The State relies on In re J.J., 142 Ill.2d 1, 153 Ill.Dec. 239, 566 N.E.2d 1345 (1991), as the sole support for its position that a court can decline to dismiss a petition for adjudication of wardship on timeliness grounds pursuant to its inherent powers. In In re J.J., the State's Attorney argued that he had the exclusive right to dismiss a petition for adjudication of wardship because of his role in the executive branch of government. This court rejected that view and determined that the circuit court had an independent duty to determine whether the State's motion to dismiss was in the best interest of the minor. In re J.J., 142 Ill.2d at 9, 153 Ill.Dec. 239, 566 *930 N.E.2d 1345. The State suggests that the trial court can similarly refuse to dismiss a petition pursuant to section 2-14 where it determines that dismissal is not in the best interest of the minor.
This court's decision in In re J.J. was not premised on any inherent judicial power to act in derogation of a statute where a court determines it is in the best interest of a minor. Instead, this court found that the Juvenile Court Act itself imposed an independent statutory duty on the court to inquire into whether the dismissal is in the best interest of a minor. In re J.J., 142 Ill.2d at 8-11, 153 Ill.Dec. 239, 566 N.E.2d 1345. This court determined that such a statutory duty did not violate the principle of separation of powers because the State's Attorney does not act in his traditional adversarial role in dependency and neglect proceedings. In re J.J., 142 Ill.2d at 8-10, 153 Ill.Dec. 239, 566 N.E.2d 1345. In addition, the court's statutory duty did not conflict with the State's Attorney's role under the Act because both are similarly charged with acting in the minor's best interest. In re J.J., 142 Ill.2d at 8-10, 153 Ill.Dec. 239, 566 N.E.2d 1345. The statutory duties recognized in In re J.J. do not support the view that the circuit court possesses the inherent power to express a child's best interest and thereby dispense with the requirements of the Act.
We therefore hold that section 2-14 does not violate the constitutional principle of separation of powers. Section 2-14 represents a legislative expression of public policy requiring the expeditious resolution of abuse and neglect cases. In setting this policy, the legislature has provided for a reasonable and adequate period of time, at least 90 days, for the exercise of judicial duties. Furthermore, section 2-14 does not take from the courts the judicial power to adjudicate a child's best interest, but merely requires that judicial duties get exercised in a manner that protects all the rights of the parties. Neither the doctrine of parens patriae nor our inherent guardianship powers provide for the broad judicial power to express a child's best interest and thereby decline to carry out this legislative policy. Therefore, section 2-14 does not unduly infringe on any inherent judicial power and our courts are duty bound to dismiss a petition for which an adjudicatory hearing is not timely held.
In closing, we reject the contention that our decision to apply the plain language of section 2-14 will place children at risk. Trial judges are aware of the statutory deadline and are charged with controlling their docket accordingly. The Juvenile Court Act further provides for the liberal supplementing of petitions. See 705 ILCS 405/2-13(5) (West 1994). Moreover, section 2-14 provides that the dismissal of a petition on timeliness grounds is without prejudice. 705 ILCS 405/2-14(c) (West 1994). Therefore, the State may immediately file a new petition where children may be put at risk.

III. CONCLUSION
We conclude the legislature intended that the circuit court dismiss a petition for adjudication of wardship pursuant to section 2-14 where an adjudicatory hearing is not completed within the statutory time period. We further conclude that in this case the statutory time period for a hearing expired and Pearlie did not waive her right to a timely hearing. Last, we conclude that the statutory mandate contained in section 2-14 requiring dismissal of a petition for adjudication of wardship does not violate the constitutional principle of separation of powers. We therefore affirm the judgment of the appellate court.
Appellate court judgment affirmed.
Justice McMORROW, dissenting:
My colleagues today content themselves with a purely literal interpretation of section 2-14 of the Juvenile Court Act of 1987 (705 ILCS 405/2-14 (West 1994)). In doing so, they ignore one of the cardinal rules of statutory construction: the proper interpretation of any legislative enactment cannot be based solely upon the language of the statute in question, but "must be grounded on the `nature, objects and the consequences that would result from construing it one way or the other.'" Mulligan v. Joliet Regional Port District, 123 Ill.2d 303, 313, 123 Ill.Dec. 489, 527 N.E.2d 1264 (1988), quoting Carrigan *931 v. Illinois Liquor Control Comm'n, 19 Ill.2d 230, 233, 166 N.E.2d 574 (1960). By failing to consider the consequences of its literal interpretation of section 2-14, the majority inadvertently contributes to the very hardship that the legislature intended to prevent, i.e., inordinate delay in resolving allegations of child abuse and neglect. Under the majority's approach, the State-on behalf of the minors-must now refile its petition for wardship, thereby starting the entire adjudicatory process over again. Equally troubling, however, is the fact that the majority fails to consider the circuit court's finding that a dismissal would not be in the best interests of the four children who are at the heart of this case.
The General Assembly enacted the Juvenile Court Act to safeguard the best interests of the children, and further charged the court system with construing the Act liberally to carry out that purpose. See 705 ILCS 405/1-2 (West 1994). The court today fails to carry out that mandate. Because I believe that section 2-14 can be construed so as to fulfill the legislature's intent of securing the best interests of the children without the automatic dismissal of the petition, I respectfully dissent.

I
The dispositive issue in this case is whether section 2-14 of the Juvenile Court Act requires an automatic dismissal where the adjudicatory hearing is commenced, but not completed, within 90 days from the date of service of process. According to the majority, the General Assembly's use of the phrase "shall be held" rather than "shall begin" or "shall commence" indicates that the legislature must have intended that the hearing be fully completed within the statutory time period. 175 Ill.2d at 482, 222 Ill.Dec. at 391-92, 677 N.E.2d at 925-26. Had the legislature wanted the hearing to "commence" within 90 days, the majority reasons, it would have said so directly in the statute. The majority further suggests that its literal interpretation of section 2-14 is "consistent with the stated purpose of the statute to `insure' the speedy resolution of abuse and neglect cases." 175 Ill.2d at 483, 222 Ill.Dec. at 392, 677 N.E.2d at 926. I disagree with this interpretation for the following reasons.
From a linguistic point of view, the majority errs in reasoning that the absence of the words "begin" or "commence" signifies an express legislative intent that the hearings must be "completed" or "concluded" within 90 days. The error in that reasoning stems from the fact that an argument based on the opposite inference could just as easily be supported. Had the legislature intended for all adjudicatory hearings to be finished within the time allotted, it would have expressly stated that the hearings shall be "completed" or "concluded" within 90 days. But the legislature did not do so. Because I do not believe that the absence of the words "begin" or "commence" is any more indicative of the legislature's intent than the absence of the words "completed" or "concluded," I am not persuaded by the majority's argument concerning what the legislature might have said.
Throughout its analysis, the majority focuses exclusively on the legislature's goal of preventing serious delay in the adjudication of abuse and neglect cases. Noticeably absent from that analysis, however, is any mention of the overriding legislative intent to safeguard the best interests of the minors. See In re J.J., 142 Ill.2d 1, 8, 153 Ill.Dec. 239, 566 N.E.2d 1345 (1991); see also 705 ILCS 405/1-2 (West 1994) (requiring Juvenile Court Act to be "liberally" construed to carry out its purpose of securing that which is best for the minors). That paramount interest permeates the entire Juvenile Court Act, including section 2-14. As our appellate court has recognized, "[w]hile one of the express purposes of [section 2-14] is to prevent grave harm to minors and families by less than diligent court proceedings [citation], the overall purpose of the Act is to safeguard the children [citations]." In re H.R., 283 Ill. App.3d 907, 912, 219 Ill.Dec. 428, 671 N.E.2d 93 (1996). Indeed, it was in accordance with that purpose, as well as the legislative mandate to construe the Act liberally, that Judge Smierciak, who presided over this case from its inception, denied the respondents' motion to dismiss pursuant to section 2-14. The transcript here reveals that Judge Smierciak specifically found that granting the motion to *932 dismiss would not be in the best interests of the children. He stated:
"Each of the continuances that was had in this case was done with the best interest of these children in mind. Each was done out of necessity. And we certainly believe that the spirit of the statute has been followed.
I would also state unequivocally that it would not be in the best interest of these children to dismiss these petitions at this time."
Ignoring Judge Smierciak's finding, the majority today assumes, without explanation, that the speedy resolution of adjudicatory hearings, as contemplated by section 2-14, will always be consistent with the legislature's overall intent to safeguard the children. In my opinion, however, the swift prosecution of these hearings may not always be in a child's best interest. The case at bar amply reinforces and highlights my position. Although I am not unmindful that the legislature stated that serious delay "can cause grave harm to the minor and the family" (705 ILCS 405/2-14(a) (West 1994)), I also cannot ignore the fact that the legislature expressly provided that the best interests of the children must prevail under the Act. Given this statutory scheme, the desire for a prompt adjudication, no matter how laudable in the abstract, should and must yield when necessary or desirable to the best interests of the children in a particular case. To hold otherwise would be to undermine the very essence of our Juvenile Court Act.
I take issue with the majority's statement that its interpretation of section 2-14 comports with "the stated purpose of the statute to `insure' the speedy resolution of abuse and neglect cases." 175 Ill.2d at 483, 222 Ill.Dec. at 392, 677 N.E.2d at 926. On the contrary, requiring a dismissal under the circumstances of this case will only serve to defeat the will of the legislature by generating further delay. I note that Judge Smierciak had already ruled on numerous pretrial motions, entertained opening arguments, and began hearing witness testimony. As such, he was familiar with the participants in the case as well as the allegations of abuse and neglect. Notwithstanding the depth of his involvement, the majority now insists that Judge Smierciak erred by not dismissing the petition in the middle of the trial. In my opinion, a dismissal of the petition at this juncture will not only undo all that has been accomplished so far, but will also set off a chain of events which will prolong the final adjudication of the charges of abuse and possibly put the victims at risk. Indeed, under today's ruling, the State must once again file its petition for wardship, obtain service of process, seek a new order of temporary custody, and attempt to reset the matter for trial.[1] There is no guarantee that this case will even be reassigned to Judge Smierciak. Assignment to a new or different judge to reconsider previously litigated issues represents a waste of judicial time and effort.[2]
The majority's literal interpretation of section 2-14 has the potential of encouraging an endless cycle of litigation. I point out that it was not judicial foot dragging which prevented the trial judge from trying this complex case within the statutory deadline. Rather, it was an over-crowded court docket. In this respect, we have for review the detailed record made by the trial judge in this case so as to fully inform the reviewing courts of the extent of the problem and the reason for the *933 delay. As Judge Smierciak explained in denying the motion to dismiss:
"This case is unusual because of the substitution of attorneys, because of the great number of pretrial motions that were filed on behalf of the children and other parties as well as by the fact that the lawyers have suggested that there would be as many as 10 to 12 witnesses testifying in this case.
In fact, I've blocked out this day and two subsequent days on this court's calendar to hear this case because of its complexity and because of the adversarial stances that have been taken by the parties. With 4000 cases on the Court call, it's just impossible to hear 10-, 12-witness cases and take 20 hours of court time to try them without scheduling in this manner."
The majority pays little heed to Judge Smierciak's explanation as to why this case could not be resolved within 90 days of service of process. Had it done so, the majority would have been cognizant of the impractical consequences of its decision to require the dismissal of the present action. Assuming, as we should, that the State still has an interest in prosecuting this case, it must now return to the same congested court system from which the case is being dismissed. The State must refile without any guarantee that the system will be any less congested, or that the second action will produce a result any different from the first. Indeed, the majority offers little, if any, assurance that a refiled petition will not suffer the same fate as the original petition.
Instead, the majority callously suggests that "the legislature has provided for a reasonable and adequate period of time, at least 90 days, for the exercise of judicial duties," and further that "[t]rial judges are aware of the statutory deadline and are charged with controlling their docket accordingly." 175 Ill.2d at 492, 222 Ill.Dec. at 396, 677 N.E.2d at 930. In my view, it is naïve to think that even the most conscientious trial judge will be able to fully try all adjudicatory hearings within 90 days of service of process, especially when one considers what is involved in trying these cases. Presumably, the 90-day period includes the filing of motions disputing personal jurisdiction, contesting service of process, or challenging the sufficiency of the complaint. After those motions are disposed, defendants will then be afforded an opportunity to answer the complaint so as to place the parties at issue. At this point, the parties may commence discovery: propounding written interrogatories, responding to requests to produce documents and/or admit facts, and taking of the parties' depositions. Discovery may be further complicated if the parties wish to present expert testimony, as is often the case where allegations of sexual abuse are involved. If the parties do not comply with discovery orders, additional court time will be needed to rectify the noncompliance. Finally, the court must actually hear the witnesses and render its decision. All of this in a case which is given what the majority deems is a "reasonable" statutory life of 90 days.
In view of the foregoing, I do not share my colleagues' confidence "that the trial judge can exercise sufficient control over the proceedings to prevent a party from obtaining a dismissal through purposeful delay." 175 Ill.2d at 483, 222 Ill.Dec. at 392, 677 N.E.2d at 926. Even if a trial judge suspected that a party was engaging in such tactics, it is not likely that the additional burden of disciplining the laggard party would have a positive impact upon the judge's ability to try the matter in 90 days. If anything, taking the time to issue rules to show cause, hold contempt hearings and order sanctions would actually hamper the progress of the case. Therefore, unlike the majority, I have serious doubts about whether trial judges can realistically comply with the deadline set forth in section 2-14, as interpreted by the majority, simply by exercising judicial oversight of recalcitrant litigants. Moreover, I think it unwise to underestimate the ingenuity of respondents who have now been given an incentive to extend the litigation beyond the statutory deadline. I am concerned that today's opinion opens the door for such respondents to thwart the legislature's desire to protect the best interests of the minors.
It is well settled that "a court construing the language of a statute will assume that the legislature did not intend to produce an absurd *934 or unjust result." State Farm Fire & Casualty Co. v. Yapejian, 152 Ill.2d 533, 541, 178 Ill.Dec. 745, 605 N.E.2d 539 (1992), citing People v. Steppan, 105 Ill.2d 310, 316, 85 Ill.Dec. 495, 473 N.E.2d 1300 (1985). In addition, "`[w]hen the literal enforcement of a statute would result in great injustice and lead to consequences which the legislature could not have contemplated, the courts are bound to presume that such consequences were not intended and will adopt a construction which it may be reasonable to presume was contemplated by the legislature. City of Chicago v. Mayer, 290 Ill. 142 [124 N.E. 842].'" People ex rel. Cason v. Ring, 41 Ill.2d 305, 312-13, 242 N.E.2d 267 (1968), quoting Village of Glencoe v. Hurford, 317 Ill. 203, 220, 148 N.E. 69 (1925). The majority's literal interpretation of section 2-14 leads to absurd results while at the same time prejudices society's interest in protecting its children. Because the legislature could not have intended such consequences, I believe this court should adopt a more reasonable construction than that suggested by my colleagues. Such a construction may be found in a recent decision of the Fourth District of the Appellate Court, decided after we granted leave to appeal in the instant case. In re H.R., 283 Ill.App.3d 907, 219 Ill.Dec. 428, 671 N.E.2d 93 (1996).
In In re H.R., the State filed a petition for adjudication of wardship on November 9, 1995. The circuit court of Champaign County commenced the adjudicatory hearing 85 days later. After hearing extensive testimony, the court continued the matter for an additional 45 days. Shortly thereafter, the respondent mother filed a motion to dismiss pursuant to section 2-14. The court granted the motion to dismiss, and the State appealed. In reversing the order of the circuit court, the Fourth District expressly rejected the analysis utilized by the appellate court, and which is being used by this court, in the instant case. H.R., 283 Ill.App.3d at 910, 219 Ill.Dec. 428, 671 N.E.2d 93. Instead, the H.R. court held that section 2-14 does not require a dismissal of a petition where the hearing is begun, but not yet completed, within the 90-day period. H.R., 283 Ill. App.3d at 912, 219 Ill.Dec. 428, 671 N.E.2d 93. In support of this holding, the H.R. court stated at length:
"We disagree with the S.G. court's interpretation of the word `heard.' Although the matter must be `heard,' that is not synonymous with `concluded.' Witnesses and parties may be `heard' at a hearing on a matter which is not concluded. See Black's Law Dictionary 721 (6th ed. 1990) (definition of `hearing' [hold means "[t]o administer; to conduct or preside at; to convoke, open and direct the operations of"]). A hearing need not be concluded and the decision of the tribunal need not be made for the matter to be in the process of being `heard.' It must be recognized that the number and availability of witnesses affects when the hearing will be concluded. The legislature could not have reasonably meant that a hearing, though commenced, must be halted and the cause dismissed because of the illness of one of the witnesses, or that the parties to the proceeding would simply be denied the opportunity to present witnesses who would not be available on time." H.R., 283 Ill.App.3d at 912, 219 Ill.Dec. 428, 671 N.E.2d 93.
In addition, the court in H.R. further emphasized that the overall purpose of the Juvenile Court Act is to safeguard the best interest of the children. H.R., 283 Ill.App.3d at 912, 219 Ill.Dec. 428, 671 N.E.2d 93, citing 705 ILCS 405/1-2(1) (West 1994). The court then pointed out that "[g]iving the persons alleged to be endangering the children the opportunity to retain custody of the children simply because an adjudicatory hearing, though started, has not been concluded within the 90-day period is not consistent with the overall purpose of the Act." H.R., 283 Ill.App.3d at 912, 219 Ill.Dec. 428, 671 N.E.2d 93. Accordingly, the court concluded that the "beginning of the adjudicatory hearing within 90 days in the case at bar satisfied the statute, and the dismissal of this case was an abuse of discretion." H.R., 283 Ill.App.3d at 912, 219 Ill.Dec. 428, 671 N.E.2d 93.
I find the foregoing reasoning reflects the will of the General Assembly more accurately than the literal approach endorsed by my colleagues. The United States Supreme Court has "repeatedly warned against the dangers of an approach to statutory construction which confines itself to the bare words of a statute [citations], `for literalness *935 may strangle meaning.'" Lynch v. Overholser, 369 U.S. 705, 710, 82 S.Ct. 1063, 1067, 8 L.Ed.2d 211, 215 (1962). I would heed that warning in this case and hold, like the Fourth District appellate panel, that the only way to fully effectuate the mission of the legislature is to liberally construe the word "heard" so as to include the commencement of a hearing. See, e.g., People v. Williams, 59 Ill.2d 402, 405, 320 N.E.2d 849 (1974) (holding speedy-trial provision ("[e]very person * * * shall be tried * * * within 120 days" (emphasis added)) satisfied by commencement of proceeding). Any other interpretation would lead to absurd consequences that could not possibly have been contemplated by our General Assembly.
Finally, I realize that my voice is only that of a dissenter, and that the majority opinion speaks with the force of law. Accordingly, I call upon the legislature to act promptly in amending the Juvenile Court Act so as to provide trial courts with some degree of discretion in granting or denying motions to dismiss pursuant to section 2-14. In this respect, I urge our legislature to take note of those factors which can cause-unavoidably at times-a violation of the 90-day statutory deadline, such as congested court calendars and the exigencies of litigation.[3] Indeed, if safeguarding the rights of children is to have any real significance in Illinois, courts must be given a legitimate opportunity to pass upon the allegations of abuse and neglect. Sadly, when that opportunity is needlessly hampered, it is the abused and neglected children-in whose interest the General Assembly acted in the first place-who suffer the tragic consequences.
Because I would affirm the order of the circuit court denying respondents' motion to dismiss, I respectfully dissent.
HEIPLE, C.J., and MILLER, J., join in this dissent.
NOTES
[1] Presumably, any orders of temporary wardship removing the children from their home on the basis of abuse and/or neglect would have to be automatically vacated until such time as the State refiles its petition. The majority fails to explain what will happen to the children during this interim period.
[2] Other possible scenarios highlight the absurdity of the majority's approach even more so than the instant case. Consider, for example, the judge who decides to take a case under advisement after presiding over the trial. The judge does so despite the imminent approach of the 90-day deadline simply because the judge realizes that the decision will affect the lives of many people, including the children. According to the majority, that judge would have to either rule on the case forthwith or risk running afoul of section 2-14. Similarly, under the determination of the majority, a petition would have to be dismissed if, after trial had been commenced, witnesses were ill or otherwise unavailable until after the 91st day or thereafter.
[3] In response to a question during oral argument, the assistant Cook County State's Attorney represented the following to the court: "The mandatory application of the statute as proposed by the appellate court, I am told, would result in the dismissal of thousands of petitions for adjudications of wardship in the circuit court."