*In re* E.M., Jr., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Sheila Anderson, Respondent-Appellant).—*In re* E.M., Jr., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Eric Motton, Sr., Respondent-Appellant).

Fourth District    Nos. 4—97—0707, 4—97—0708 cons.

Opinion filed March 20, 1998.

J. Steven Beckett and Gary A. Webber, both of Beckett & Webber, P.C., of Urbana, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Arnold Dipert, of Urbana, guardian *ad litem*.

JUSTICE McCULLOUGH delivered the opinion of the court:

Following adjudicatory hearings, the trial court entered an order on August 11, 1997, terminating the parental rights of respondent mother, Sheila Anderson (Sheila), and respondent father, Eric Motton, Sr. (Eric), as to their minor child, E.M., Jr., born June 30, 1995. Respondents' counsel on appeal has filed a motion for leave to withdraw as to the mother, contending there are no colorable issues as to the order terminating her parental rights and citing *Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967), and *In re Brazelton*, 237 Ill. App. 3d 269, 604 N.E.2d 376 (1992). While reviewing courts have held that the *Anders* procedure is applicable to an appeal from a judgment terminating parental rights when appointed counsel moved to withdraw on the ground that the appeal

was without merit (*In re Keller*, 138 Ill. App. 3d 746, 748, 486 N.E.2d 291, 291-92 (1985)), respondents' counsel has submitted an appellate brief on behalf of the mother raising issues also raised with respect to the appeal by the father, for whom counsel has not requested leave to withdraw. Counsel has submitted an appellate brief raising cogent arguments in support of the mother's position contesting the order terminating her parental rights, and we will review those issues in the context of this consolidated appeal.

The issues are (1) whether the trial court abused its discretion in denying the State's motion to dismiss the termination proceeding prior to the adjudicatory hearing and (2) whether the decision terminating the parental rights of respondents was in the best interest of the child. As to respondent father, there is the additional issue of whether the trial court's finding of unfitness was an abuse of discretion and against the manifest weight of the evidence.

The facts will be referred to only as necessary in determining the issues on appeal.

On July 5, 1995, the Peoria County State's Attorney filed a petition naming respondents as the parents of E.M., Jr. At a hearing in Peoria County on July 18, 1995, Sheila admitted the allegations of neglect. On August 3, 1995, an order of *habeas corpus ad prosequendum* was entered in Peoria County directing the warden of the Taylorville Correctional Center, where Eric was incarcerated for theft, to produce him on August 18, 1995, for an appearance and answer in the case. On August 15, 1995, the Peoria County circuit court entered a dispositional order finding Sheila unfit, making E.M. a ward of the court, and appointing the Department of Children and Family Services (DCFS) as guardian. The case was then transferred to Champaign County.

Eric appeared at a hearing held in Peoria County on August 18, 1995, where he was informed of the charges and disposition of the case as regards E.M., Jr. He indicated he had insufficient knowledge to admit or deny the allegations of the neglect petition but had no objection to the disposition. He was informed of his appeal rights and that the case had been transferred to Champaign County. Eric acknowledged receipt of a service plan requiring him to obtain employment and suitable housing and not engage in criminal activity. Eric remained incarcerated until December 4, 1995.

On October 28, 1996, the State filed a supplemental petition to terminate both respondents' parental rights as to E.M., Jr., alleging in count II that respondents failed to make reasonable progress toward the return of the minor to them within 12 months of the adjudication of neglect. Adjudicatory hearings on the termination pe-

tition previously allotted for January 30, 1997, and March 6, 1997, were vacated by the court and the matter scheduled for April 3, 1997. On that date, the State moved to withdraw and dismiss the termination petition, the motion was denied, and the adjudicatory hearing was held.

At the conclusion of the adjudicatory hearing, the trial court noted that when the case began Sheila was in treatment with CICTA and had two prior periods of residential treatment for substance abuse. A month after her release from CICTA she again began using cocaine, refused all treatment, and only ceased substance abuse when she entered residential treatment at Gateway in April 1997. The court found that 13 months of refraining from treatment, with no attempt to abstain from substance abuse, was not reasonable progress. As to Eric, the court noted that the dispositional order from the Peoria County circuit court was unclear regarding what was expected of him. However, it was clear that DCFS required Eric to refrain from committing criminal offenses and stay out of jail and to establish a residence where E.M., Jr., would not be compelled to live with two people convicted of drug offenses. The court found it inappropriate for a child to have to wait 18 months for a parent to obtain a suitable residence in order to obtain custody and expressed doubt that Eric would do so in the coming month as he claimed. The court then found both parents unfit for failing to make reasonable progress toward the return of E.M., Jr., within 12 months of the adjudication of neglect in August 1995.

A disposition hearing was held July 24, 1997, focusing on whether termination of respondents' parental rights would be in the best interest of E.M., Jr. The report from DCFS indicated that Sheila had been discharged from Gateway and was residing in a halfway house, attending parenting classes and scheduled to begin general equivalency diploma classes in September. Counsel reported that Eric had obtained his own residence in the past four or five days but did not have a copy of the lease and had not informed DCFS. E.M., Jr., had been in the only home he had ever known for two years and the home was an adoptive resource. The court found that Sheila had waited a long time to address her addiction but hoped that with the change in environment she would be able to persist in her sobriety and establish a healthy lifestyle. However, it would not be in E.M., Jr.'s best interests to tear him away from the only family he had ever known. The petition for termination of Sheila's parental rights was granted and the guardian was given authority to consent to adoption. As for Eric, the court found his credibility doubtful regarding a recently acquired residence in view of his prior testimony denying knowledge

of his aunt's conviction for intent to deliver a controlled substance and the fact that while both respondents denied a relationship, they were about to parent their third child. The court found that Eric was not now, nor in the near future would he be, in a position to provide E.M., Jr., the home stability and nurturing that E.M., Jr., had with his foster parents and it was in E.M., Jr.'s best interests to grant the petition. The court then terminated Eric's parental rights to E.M., Jr., and granted the guardian authority to consent to adoption.

■ On appeal, respondents first contend that the trial court abused its discretion in denying the State's motion to withdraw and dismiss the termination petition because the April 3 (and apparently the June 23) adjudicatory hearings were not held within 90 days, or even a "good cause" extension of an additional 30 days, of the date of service of the petition as required by section 2—14 of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2—14 (West 1996)). That section provides in part:

> "(b) When a petition is filed alleging that the minor is abused, neglected or dependent, an adjudicatory hearing shall be held within 90 days of the date of service of process upon the minor, parents, any guardian and any legal custodian.

> (c) Upon written motion of a party *** or upon the court's own motion and only for good cause shown, the Court may continue the hearing for a period not to exceed 30 days, and only if the continuance is in the best interests of the minor. *** Only one such continuance shall be granted. ***

> *** If the adjudicatory hearing is not heard within the time limits required by subsection (b) or (c) of this Section, upon motion by any party the petition shall be dismissed without prejudice.

> (d) The time limits of this Section may be waived only by consent of all parties and approval by the court." 705 ILCS 405/2—14 (West 1996).

The trial court vacated the allotted dates for the adjudicatory proceedings on the termination petition two times—January 30, 1997, and March 6, 1997. The April 3, 1997, adjudication hearing was held 157 days following service of the supplemental petition. Respondents claim that pursuant to *In re S.G.*, 175 Ill. 2d 471, 483, 677 N.E.2d 920, 926 (1997), the supplemental petition for termination of their parental rights should have been dismissed.

Respondents never argued in the trial court that the provisions of section 2—14 of the Act applied to the termination of parental rights petition. While the State did file a motion to dismiss the petition at the April 3, 1997, hearing, it did so because the petition was deemed "premature" and the State believed the best interests of both E.M., Jr., and M.M., a child subsequently born to respondents on October

20, 1996, would be served by having their status adjudicated at the same time. The time limitations of section 2—14 were not mentioned by any of the parties to the termination petition respecting E.M., Jr., and the trial court itself never raised the issue. Because the issue was not before it, the trial court could not have abused its discretion in denying the State's motion and the issue may be deemed waived. See *In re A.H.*, 235 Ill. App. 3d 12, 16, 600 N.E.2d 1302, 1304 (1992) (principles of waiver apply to proceedings conducted pursuant to the Act).

On the merits, in *S.G.* (175 Ill. 2d at 481-83, 677 N.E.2d at 925-26), the supreme court held that the timing provisions of section 2—14 of the Act were mandatory and required dismissal of a petition for adjudication of wardship when the adjudication of wardship was not concluded until a time beyond the statutory period.

In this case, the untimely adjudication of which respondents complain did not occur in the context of a petition alleging abuse and neglect of minors where an adjudication of wardship was sought, as was the case in *S.G.*, but at the much later stage of juvenile proceedings where termination of parental rights is sought as to minors already made wards of the court.

■ In interpreting a statute, the best evidence of legislative intent is the language of the statute. *People v. Bryant*, 128 Ill. 2d 448, 455, 539 N.E.2d 1221, 1224 (1989). Section 2—14(b), containing the 90-day timing limitation during which adjudication is to conclude, expressly refers to a petition "alleging that the minor is abused, neglected or dependent." 705 ILCS 405/2—14(b) (West 1996). Section 2—14(a) acknowledges that "serious delay in the adjudication of *abuse, neglect*, or *dependency* cases can cause grave harm to the minor and the family and that it frustrates the best interests of the minor and the effort to establish permanent homes for children in need." (Emphasis added.) 705 ILCS 405/2—14(a) (West 1996). There is no reference in section 2—14 to a petition seeking a finding of parental unfitness and termination of parental rights. If the allegations of abuse or neglect cannot be proved, a child taken into temporary custody will be speedily returned to his parents. The same is not true for a petition to terminate parental rights. If it is not proved in a termination proceeding that the minor's best interests favor a termination of parental rights, the child is not automatically returned to a parent found to be unfit. It would serve no one's interest to enforce a 90-day resolution where termination of parental rights is in issue and needlessly sunder a family where a parent is making significant strides immediately before and after the termination petition has been filed. We conclude, therefore, that the timing

provisions of sections 2—14(b) and (c) do not apply to adjudications of petitions for termination of parental rights.

Eric claims that the court's finding of his unfitness was against the manifest weight of the evidence because he neither admitted nor denied the allegations of the initial neglect petition and no determination was then made as to his unfitness. He contends that E.M., Jr., should have been placed in his custody upon his release from prison.

While the original neglect petition contained allegations pertaining only to the mother, and the father was not present at the hearing in which the mother admitted the allegations and was found to be unfit, the father appeared in court three days later and was informed of the disposition and his right to appeal. He had no objection to the disposition and did not take an appeal of the action placing custody in DCFS. Moreover, as he was then incarcerated, he clearly was unable to take custody.

■ A trial court's finding of unfitness and termination of parental rights will be given great deference because it had the opportunity to view and evaluate the testimony of the witnesses, and its decision will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re A.T.*, 197 Ill. App. 3d 821, 829-30, 555 N.E.2d 402, 408 (1990). Reasonable progress toward the return of the child for purposes of showing a parent's fitness may be found if the trial court can objectively conclude that the parent's progress is sufficiently demonstrable and is of such quality that the child can be returned to the parent within the near future. *In re J.P.*, 261 Ill. App. 3d 165, 175, 633 N.E.2d 27, 35 (1994). The standard by which progress is to be measured is parental compliance with the court's directives, the service plan, or both. *In re L.L.S.*, 218 Ill. App. 3d 444, 463-64, 577 N.E.2d 1375, 1388-89 (1991).

■ The father contends the court's finding that he did not make reasonable progress toward the return of E.M., Jr., to his custody within 12 months of the adjudication of neglect is against the manifest weight of the evidence. The evidence demonstrates that respondent was required to complete a psychological evaluation and obtain suitable housing for himself and E.M., Jr., following his release from prison. He was also ordered to refrain from criminal activity and further incarceration. Eric completed only the first half of the evaluation in March 1995 and did not complete the second half until February 1997, two years later and immediately preceding the termination hearing. Even at that point he had not obtained suitable housing, though he expected to have a residence the following month. During the interim, he had committed two more offenses, driving with a revoked license and driving under the influence, and was

incarcerated for 60 days for failing to pay fines associated with those convictions. He was required to attend Alcoholics Anonymous meetings, complete a minimum of 10 hours of alcohol and drug remedial education, and a minimum of 20 hours of outpatient treatment. Eric neither claimed nor provided proof that he had completed any of those requirements other than attending the AA meetings. Eric claimed he had obtained his own apartment five days before the final hearing, but he was unable to supply proof and admitted he had not informed DCFS. The record indicates that Eric reportedly worked at six different jobs and had a period receiving unemployment benefits during the 18 months following his release from incarceration, a pattern that does not indicate job stability. The court's finding of Eric's unfitness was not against the manifest weight of the evidence. The mother does not challenge the court's finding as to her unfitness.

Respondents argue that the trial court's decision terminating their parental rights was not in the minor's best interest. While parental rights and responsibilities are of deep human importance and will not be lightly terminated, the deference accorded to parental rights does not negate a court's responsibility to protect minors from neglect and abuse. The evidence indicates that each of Sheila's five children tested positive for cocaine use during her pregnancies and her rights to three of those children were terminated shortly after the adjudication of neglect of E.M., Jr. She continued to use cocaine up through the time of the first hearing for termination of parental rights in April 1997. While she then entered a residential treatment center, she had successfully completed three residential treatments in the past and each time had returned to using drugs. Eric had not been able to obtain proof of residence or avoid illegal conduct that resulted in subsequent incarceration. In contrast, E.M., Jr., was residing with the same foster parents since birth and they were an adoptive resource. He has an attachment to them and appears upset when his foster mother leaves. Based on all the evidence of record, we cannot say the order terminating respondents' parental rights was against the manifest weight of the evidence.

The order of the circuit court is affirmed.

Affirmed.

GARMAN, P.J., and GREEN, J., concur.