NOTICE

Decision filed 10/05/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 210066-U

NO. 5-21-0066

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* J.T., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Madison County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 20-JA-18 |
| | ) | |
| Marcus T., | ) | Honorable |
| | ) | Amy Maher, |
| Respondent-Appellant). | ) | Judge, presiding. |

JUSTICE WHARTON delivered the judgment of the court.
Presiding Justice Boie and Justice Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Where the record on appeal was incomplete, we are unable to determine whether the trial court erred in denying Marcus T.'s motion to dismiss and subsequently entered adjudicatory and dispositional orders, and accordingly, we affirm.

¶ 2    Marcus T. appeals from the trial court's denial of his motion to dismiss, and the resulting adjudicatory and dispositional orders. He filed a motion to dismiss asking the court to take notice that the State had exceeded the statutory 90-day limit for the commencement of the adjudicatory hearing. Because the adjudicatory hearing did not commence within that time limit, Marcus argues that his motion to dismiss should have been granted pursuant to section 2-14(c) of the Juvenile Court Act of 1987 (705 ILCS 405/2-14(c) (West 2018)). We affirm the trial court's orders.

1

¶ 3                                    I. BACKGROUND

¶ 4      J.T. is a male child born on September 29, 2005. Marcus is J.T.'s biological father. Christina R. is J.T.'s biological mother. This case began in Arizona on January 14, 2020, when the Arizona Department of Child Safety (DCS) took J.T. into temporary physical custody. In early December 2019, Marcus, Christina, and J.T. moved from East Alton, Illinois to Quartzsite, Arizona. On December 31, 2019, Marcus was charged with three counts of felony aggravated assault against J.T. Marcus was accused of punching J.T. in the left eye, biting his middle finger on his right hand, and biting his left forearm. J.T.'s injuries required medical attention at the Lake Havasu Regional Hospital, including stitches above his left eye.

¶ 5      At the time of the events in Arizona, Marcus had sole custody of J.T. because his mother, Christina, had given up custody of him when he was four years old because "she couldn't care for [him]." When DCS removed J.T. from the Arizona home, the family was living in a tent at the La Posa Tyson Wash campsite. There was no running water to the tent, and the only access to electricity was through the family's truck battery. J.T. had not been enrolled in an Arizona school. Neither Marcus nor Christina was employed at the time that J.T. was removed from the home. DCS alleged that J.T. was dependent due to abuse or neglect of his parents. Christina was also accused of failing to protect J.T. because shortly after Marcus was arrested, she sold Marcus's firearms to bail him out of jail despite his physical abuse of J.T.

¶ 6      DCS indicated that it had probable cause to take temporary custody to protect J.T. from suffering abuse or neglect and that it was contrary to J.T.'s welfare to remain in the home. DCS noted that J.T. was vulnerable even though he was 14 years old because he still relied on his caregiver to provide him with a safe place to live.

¶ 7    DCS was able to find a family placement for J.T. in the home of his paternal grandfather, Ralph T., and his wife, Josephine T. Ralph and Josephine then lived in a small pop-up tent on the La Posa Tyson Wash campsite and lived there with their adopted four-year-old daughter, E.T.

¶ 8    J.T. informed the DCS investigator, Brandon Freese, that he wanted to return to Illinois and live with his Uncle Gary. Freese reported that given the recent escalation in physical violence by Marcus against J.T., Marcus should not continue to be J.T.'s primary caregiver. After further consultation with Ralph, Josephine, Christina, and J.T., Freese concluded that Ralph and Christina wanted Marcus to return to the campsite and wanted J.T. to be sent away from the campsite.

¶ 9    On February 6, 2020, the La Paz County Superior Court entered an order for transfer between La Paz County, Arizona, and Madison County, Illinois, pursuant to a Uniform Child Custody Jurisdiction and Enforcement Act conference held on January 23, 2020. See Ariz. Rev. Stat. § 25-1001 *et seq.*; 750 ILCS 36/101 *et seq.* (West 2018). Thereafter, on February 11, 2020, the Madison County circuit court issued a warrant pursuant to section 2-24 of the Juvenile Court Act of 1987 (705 ILCS 405/2-24 (West 2018)) to take J.T. into custody because his health, welfare, or person may be in danger due to the circumstances of his home environment.

¶ 10    On February 20, 2020, the trial court entered its order awarding temporary custody of J.T. to the Illinois Department of Children and Family Services (DCFS).

¶ 11    Most of this case's procedural history involves continuances entered by the trial court. The continuances were of adjudicatory and dispositional hearing settings. As Marcus's motion to dismiss was based in part on these continuances, we will include each one in this factual background in date order.

¶ 12    A March 19, 2020, continuance was granted to allow DCFS time to locate the parents. A May 26, 2020, continuance was granted "to allow Father's attorney time to review case."

3

¶ 13    On June 24, 2020, DCFS filed its report with the court. J.T. was currently placed in Alton with his paternal aunt and uncle. Nicholas Koch was assigned as the DCFS caseworker via the agency Caritas Family Solutions on March 16, 2020. Koch reported that Marcus and Christina were both scheduled to complete an integrated assessment on April 26, 2021. Both parents did not appear for and participate in the assessment. Both parents were also advised to cooperate with Caritas. Both parents were rated as unsatisfactory on this initial plan. Between April and June, Marcus did not return Koch's calls, and refused to provide any location or contact information for Christina. Koch received a telephone call from Christina on June 19, 2020. He advised her to come to the office on June 23, 2020, but she failed to appear. A diligent search came back with insufficient information about Christina's whereabouts and contact information. Supervised visitation was scheduled for one hour per week. As of the date of the report, neither parent had exercised visitation rights. J.T. informed Koch that he did not want to have any visits with Marcus. Koch reported that the recommended permanency goal was independence in that J.T. stated that he did not want to go to live with either parent.

¶ 14    A July 9, 2020, continuance was granted on the motion of "all parties." On that same date, Christina entered her appearance and requested the appointment of an attorney. The trial court approved Christina's request.

¶ 15    An August 6, 2020, continuance was granted on the motion of "all parties" in order for a "worker to explore counseling or bonding assessment for minor."

¶ 16    On September 4, 2020, DCFS via the Caritas organization filed its report in advance of the adjudicatory and dispositional hearings. The Caritas caseworker now assigned to J.T.'s case was Cyndi L. Thomas. In this report, Caritas outlined the service plans with objectives that had been

created for each parent. As this appeal only involves the father, Marcus, we will only report his service plan objectives. Marcus's service plan included the following tasks:

(1) Complete an Integrated Assessment;

(2) Cooperate with Caritas;

(3) Parenting Classes;

(4) Substance Abuse Assessment;

(5) Anger Management Assessment; and

(6) Individual Counseling.

Of the six tasks, Marcus only completed the integrated assessment. Caritas made referrals for all the assessments but did not have any further contact with Marcus since July 22, 2020.

¶ 17    In the September 4, 2020, report to the court, Caritas also indicated that it referred J.T. for counseling to address trauma. The caseworker met with J.T. at his relative placement's home on August 20, 2020. At that time, J.T. was helping his foster parent build a retaining wall. J.T. was reported as being pleasant and happy in his placement. Caseworker Thomas asked J.T. about visiting Marcus, and he adamantly stated that he did not want to see him.

¶ 18    On September 17, 2020, the court appeared to have continued the court setting on its own motion for the adjudicatory and dispositional hearings, stating: "DCFS to file service plan & visitation plan at least one week prior to the next setting."

¶ 19    On September 29, 2020, DCFS, via Caritas, filed a family service plan. The Caritas caseworker, Thomas, stated that Marcus could not understand the severity of his actions and blamed the December 31, 2019, altercation on J.T. Christina was reportedly not participating in the case. Caritas had recently been in contact with Marcus, who asked Caritas to send his service plan to his attorney's office. Caritas complied with this request. Caseworker Thomas spoke with

Marcus on July 22, 2020, to find out where he was with his services, to which he replied that he had "not got around to it." In addition to the service plan tasks included in the September 4, 2020, Caritas report, Caritas also added the following tasks to Marcus's service plan:

(7) Agrees to Stay in Contact with Case Worker Monthly and Report Phone or Address Changes; and

(8) Agrees to Sign all Consents for Release of Information.

Except for completing his integrated assessment, Marcus was rated unsatisfactory on the remaining seven tasks.

¶ 20 On October 6, 2020, the State filed its amended juvenile petition alleging that J.T. was now 15 years old and was a neglected minor. The State asked the court to make J.T., Marcus, and Christina as party respondents to this case, and to issue summons relative to a date for the adjudicatory hearing. Finally, the State asked the court to hold a shelter care hearing at the first available date.

¶ 21 On October 6, 2020, the trial court continued the case on the motion of "all parties." The order was signed by the State, the GAL, and by the attorneys representing Marcus and Christina. Then, on October 20, 2020, at Marcus's request, the trial court granted his motion to continue, noting: "DCFS to provide mental health counseling for minor. No further continuances. All parties to appear."

¶ 22 On November 30, 2020, the Caritas organization filed its report in advance of the adjudicatory and dispositional hearings. Marcus had still not made any progress on the service plan tasks. Neither parent had exercised the allowed supervised visitation with J.T. The permanency goal remained the same—placement of J.T.'s guardianship with DCFS and to ultimately obtain J.T.'s independence. J.T. was currently engaged in counseling services. J.T.'s counselor reported

6

that he had been receiving weekly services since September 11, 2020, and that they were working on improving communication skills, anger management skills, and processing his trauma.

¶ 23 On December 9, 2020, the State filed its motion to continue based on a medical emergency that would preclude the assigned assistant state's attorney from participating at the scheduled December 10, 2020, hearing. The State made the request for the stated reason that this attorney had handled the file from the date the case was filed.

¶ 24 Also on December 9, 2020, Marcus filed his motion to dismiss alleging that he had entered his appearance in the matter on May 26, 2020, and that the adjudicatory hearing had not been commenced within 90 days as statutorily required.

¶ 25 On December 10, 2020, the trial court reset the adjudicatory hearing, the dispositional hearing, and all pending motions for February 2, 2021.

¶ 26 On January 20, 2021, the Caritas organization filed its report in advance of the adjudicatory and dispositional hearings. Caritas reported that Marcus had made no progress on his service plan and was overall rated as unsatisfactory. The permanency goal remained the same. On December 18, 2020, caseworker Thomas met with J.T. at his foster home. J.T.'s aunt was present during the meeting and said that J.T. was doing well in the home, and although there had been a few struggles, they had worked through them. J.T. reported that he was happy in the home. J.T. again indicated that he did not want to see his father. Thomas also had contact with Marcus before the last hearing date. Marcus refused to cooperate, was belligerent, accused Thomas of kidnapping his son and not allowing him to visit, and told Thomas that J.T. had no right to make visitation decisions. Marcus informed Thomas that his attorney would address his concerns.

¶ 27 On February 2, 2021, the trial court held the adjudicatory hearing. Marcus and Christina did not appear. The trial court found that J.T. was dependent in that he was "without necessary and

proper medical or remedial care through no fault, neglect, or lack of concern of a parent." See 705 ILCS 405/2-4(1)(a), (c) (West 2018). The court based its finding on the fact that J.T.'s parents were unable to meet his needs. The court concluded that the allegations of the petition were proved by a preponderance of the evidence and ordered that the dispositional hearing be held *instanter* indicating that the 30-day requirement was waived by the parties and that the waiver was consistent with the minor's health, safety, and best interest. See *id.* § 2-21(2) (requires the trial court to hold the dispositional hearing no later than 30 days from the date the adjudicatory order is entered).

¶ 28    The court then immediately began the dispositional hearing on February 2, 2021, and concluded that it was in J.T.'s health, welfare, safety, and best interest to be made a ward of the court. The court found that Marcus and Christina were unable to meet J.T.'s needs. The court found that reasonable efforts and appropriate services aimed at family reunification had been made to keep J.T. with his family, but that the services could not prevent or eliminate the necessity for J.T.'s removal. The court found that leaving J.T. in the home of his parents would be contrary to his health, welfare, and safety. Thus, the trial court found that both parents were unfit; J.T. was adjudicated as a dependent and made a ward of the court; and custody and guardianship of J.T. was placed with DCFS.

¶ 29    The trial court denied Marcus's motion to dismiss on February 2, 2021, without written reasons. The written denial was included at the end of the court's dispositional order.

¶ 30    On February 9, 2021, the court entered a permanency order finding that the permanency goal was substitute care pending independence. The court selected that goal due to J.T.'s age and the services available to J.T. The court also found that additional orders were not necessary.

¶ 31    Marcus filed his notice of appeal contesting the February 2, 2021, orders adjudicating J.T. as dependent and finding that Marcus was an unfit parent.

¶ 32                                    II. ANALYSIS

¶ 33    On appeal, Marcus argues that the trial court erred in denying his motion to dismiss. In denying his motion to dismiss, the court proceeded with the adjudicatory hearing, immediately followed by the dispositional hearing.

¶ 34    Section 2-14 of the Juvenile Court Act of 1987 provides the timeline mandated for commencement of an adjudicatory hearing. 705 ILCS 405/2-14 (West 2018). "When a petition is filed alleging that the minor is abused, neglected or dependent, an adjudicatory hearing shall be commenced within 90 days of the date of service of process upon the minor, parents, any guardian and any legal custodian \*\*\*." *Id.* § 2-14(b). Section 2-14 provides a means by which the parties and/or the court can obtain a continuance to extend the 90-day requirement. If a party seeks a continuance, he or she must file a written motion no later than 10 days before the adjudicatory hearing. *Id.* § 2-14(c). The trial court may also continue the case on its own motion. *Id.* The continuance can only be for a period not to exceed 30 days and must be based upon good cause shown. *Id.* Any continuance must be "consistent with the health, safety and best interests of the minor." *Id.* In entering a continuance, the trial court is required to "enter specific factual findings to support its order, including factual findings supporting the court's determination that the continuance is in the best interests of the minor." *Id.* Rule 2-14(c) limits the number of continuances allowed to one. *Id.* The term "good cause" is to be strictly construed and must be in accord with Illinois Supreme Court Rule 231 (eff. Jan. 1, 1970), which details the procedure and manner of obtaining a continuance of a trial setting. Furthermore, "[n]either stipulation by counsel nor the convenience of any party constitutes good cause." *Id.* "If the adjudicatory hearing is not heard within the time limits required by subsection (b) or (c) of this Section, upon motion by any party the petition shall be dismissed without prejudice." *Id.* However, the section 2-14 time limits

for commencing an adjudicatory hearing are waivable, but a waiver can only occur with the consent of all parties and approval of the court. *Id.* § 2-14(d).

¶ 35 The record on appeal in this case does not contain transcripts of any of the hearings held in this case. We note that the appellant has the duty to provide a complete record on appeal. *People v. Leeper*, 317 Ill. App. 3d 475, 482 (2000); *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 319 (2003). In the absence of a complete record on appeal, "the reviewing court will presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis [citations]." *Midstate Siding & Window Co.*, 204 Ill. 2d at 319. Stated differently, without a complete record, any doubts must be resolved against the appellant. *People v. Jennings*, 254 Ill. App. 3d 14, 20 (1993).

¶ 36 In this appeal, Marcus initially questions whether he was ever served in Illinois. In Illinois, service of process in a juvenile hearing means service of the neglect petition. *In re E.M.*, 295 Ill. App. 3d 220, 224 (1998). The State may have been similarly confused about whether Marcus had been served because of its October 6, 2020, request to the court to make Marcus, Christina, and J.T. party respondents in this case, and its request to issue summons for the adjudicatory hearing. The record contains no further reference to the State's request. We note that section 2-21(1) of the Juvenile Court Act of 1987 states: "The court shall state on the record the manner in which the parties received service of process and shall note whether the return or returns of service, postal return receipt or receipts for notice by certified mail, or certificate or certificates of publication have been filed in the court record." 705 ILCS 405/2-21(1) (West 2018). Whether the court stated the manner and date of Marcus's service with process on the record is not known because no transcripts of hearings were included in the record. *Leeper*, 317 Ill. App. 3d at 482.

10

¶ 37    Marcus also raises a new theory on appeal. He argues that he was likely served in Arizona on January 14, 2020, noting that the temporary custody order entered *ex parte* indicates that notice was provided to him verbally. Under the assumption that Marcus was properly served in Arizona, and as the first court appearance in Madison County was February 20, 2020, Marcus argues that February 20, 2020, was the beginning of the 90-day period. Marcus cites no authority for this argument.

¶ 38    In reviewing the temporary custody order entered on February 20, 2020, the order contains a checkmark in the box that Marcus received notice and did not appear in court. However, nothing in the record reflects that he did receive notice of that hearing. Furthermore, the record on appeal contains no entry of appearance by Marcus in Madison County on or before February 20, 2020.

¶ 39    The trial court's March 19, 2020, order sheds light on the appearance status of the parents in this case. In that order, the trial court reset the adjudicatory and dispositional hearings for May 26, 2020, and ordered DCFS to conduct a diligent search for both Marcus and Christina. It appears that in mid-March 2020, the court had no means to contact either parent. As reflected in the court orders to that date, neither parent had appeared in person and no attorney had appeared on their behalf.

¶ 40    At some point between mid-March 2020, and May 26, 2020, DCFS located Marcus. On May 26, 2020, Marcus officially entered his appearance and asked for the appointment of counsel. The record on appeal does not provide verification of any date of service, and as Marcus bore the burden to present a full and complete record on appeal, we cannot presume that he was served on or before February 20, 2020, with the Illinois temporary custody order. *Jennings*, 254 Ill. App. 3d at 20. Furthermore, Marcus's argument that "service" occurred in February 2020 contradicts the foundation of his trial court argument in asking the court to dismiss the case. In that motion,

11

Marcus argued that the 90-day period started on May 26, 2020, the date when he entered his appearance and requested an attorney.

¶ 41    On appeal, Marcus alternatively argues that using May 26, 2020, as the commencement date of the 90-day period, the adjudicatory hearing would need to have started on August 24, 2020. On August 6, 2020, the trial court continued the hearing date on a motion of all parties. Good cause for the continuance was indicated by the court in this order in that DCFS needed to explore counseling or a bonding assessment for J.T. We acknowledge that the record on appeal does not include a written motion for that continuance as required by section 2-14(c). 705 ILCS 405/2-14(c) (West 2018). However, Marcus assumes that this written motion was required. Marcus also assumes that the parties did not consent to a waiver of the time limits for the adjudicatory hearing as authorized in section 2-14(d) (*id.* § 2-14(d)). Here, the record is incomplete in that there are no transcripts of any hearings held in this case. Marcus also did not provide any support in the form of an affidavit or other pleading from Marcus's appointed trial attorney to dispute that the parties agreed to a waiver of the time limit. Therefore, we must presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. *Midstate Siding & Window Co.*, 204 Ill. 2d at 319.

¶ 42    Because the record on appeal is incomplete, we reach the same conclusion that there is a presumption that the following continuance orders were granted in conformity with the law and with a sufficient factual basis—September 17, 2020, October 6, 2020, and December 10, 2020. *Id.*

¶ 43    Having concluded that the trial court did not err in denying Marcus's motion to dismiss, we turn to the two orders that the trial court entered on February 2, 2021. Initially, we note that without any transcript of the two hearings held on February 2, 2021, we must presume that the

12

orders had a sufficient factual basis and complied with applicable law. *Id.* We will briefly review the law guiding adjudicatory and dispositional hearings.

¶ 44     At an adjudicatory hearing, the trial court must decide if the minor is abused, neglected, or dependent. 705 ILCS 405/2-21, 2-18(1) (West 2018). A dependent minor is defined to include any minor under 18 years of age: "who is without proper medical or other remedial care recognized under State law or other care necessary for his or her well being through no fault, neglect or lack of concern by his parents, guardian or custodian ***." *Id.* § 2-4(c). The court is required to consider the minor's status at the time the adjudication petition was filed—not at the time of the hearing. *In re C.W.*, 199 Ill. 2d 198, 217 (2002). The determination of whether a minor is a dependent child requires a focus on the parent rather than the child. *In re J.J.*, 246 Ill. App. 3d 143, 151 (1993). The State must prove the grounds selected for finding that the minor is a dependent by a preponderance of the evidence. *Id.* On appeal, we will not reverse a trial court's determination that the minor child is dependent unless that determination is manifestly erroneous. *Id.* "[A] judgment is against the manifest weight of the evidence if it is clearly evident a conclusion opposite to that reached by the trial court was the proper disposition." *Id.*

¶ 45     In this case, Marcus battered his son and the Arizona authorities criminally charged him. Instead of taking responsibility for his actions, Marcus still blames J.T. for his own actions. J.T. was 14 when the crime occurred. We find that the trial court's conclusion that J.T. was a dependent minor was appropriate and was not manifestly erroneous. *Id.*

¶ 46     Immediately following the trial court's determination that J.T. was a dependent, the court proceeded with the dispositional hearing. At the dispositional stage of the case, the State must prove by clear and convincing evidence that the parent is unfit as defined by the Adoption Act. 705 ILCS 405/2-29(2) (West 2018); *In re A.J.*, 269 Ill. App. 3d 824, 828 (1994). On appeal from

a trial court's findings that a parent is unfit, the reviewing court must not retry the case but, instead, must review the trial court's findings to determine if the findings are against the manifest weight of the evidence. *In re A.W.*, 231 Ill. 2d 92, 104 (2008).

¶ 47 Here, the trial court found that considering the factual setting presented, J.T. could not stay with Marcus. In addition, despite the efforts of DCFS to reunite J.T. with his father, Marcus's absolute failure to comply with his service plan and otherwise comply with DCFS, through its agent Caritas, resulted in the court's finding that Marcus was an unfit parent. Based upon our review of the facts, we find that the trial court's finding that Marcus was an unfit parent was also appropriate and was not manifestly erroneous.

¶ 48                              III. CONCLUSION

¶ 49 We find that based upon the record before us, the trial court's denial of Marcus's motion to dismiss was not erroneous. Therefore, the adjudicatory and dispositional hearings were properly held on February 2, 2021. For the foregoing reasons, we affirm the judgments of the circuit court of Madison County.


¶ 50 Affirmed.