NOTICE

Decision filed 04/05/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210256-U

NO. 5-21-0256

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* TRAZILYAN B., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Wayne County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19-JA-54 |
| | ) | |
| Michael S., | ) | Honorable |
| | ) | Michael J. Molt, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Welch and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the record on appeal was incomplete, we are unable to determine whether the trial court erred in denying counsel's joint oral motion to dismiss, and accordingly, we affirm.

¶ 2    The respondent, Michael S., appeals from the trial court's dispositional order entered on July 20, 2021. The respondent argues that the trial court erred when it denied his oral motion to dismiss the petition for adjudication of wardship without prejudice because the adjudicatory hearing commenced 539 days after the filing of the petition, well

1

past the time limitations set forth in section 2-14 of the Juvenile Court Act of 1987 (Act)[1] (705 ILCS 405/2-14 (West 2020)). For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4      Trazilyan B. was born on November 22, 2019. On November 26, 2019, the State filed a petition for adjudication of wardship alleging that Trazilyan B. was abused as defined in section 2-3(1)(c) of the Act (705 ILCS 405/2-3(1)(c) (West 2018)), in that at the time of her birth, her blood, urine, or meconium tested positive for methamphetamine, a controlled substance that resulted in medical treatment, and that Trazilyan B.'s mother had another child in protective care. A shelter care hearing was held the same day, at which the respondent appeared.[2] At the hearing, the public defender was appointed as counsel for the respondent. By agreement, the trial court found that probable cause existed for the filing of the petition, and that it was an immediate and urgent necessity that Trazilyan B. be placed in a shelter care facility for her protection. The trial court placed Trazilyan B. in the temporary custody of the Department of Children and Family Services (DCFS). Additionally, as part of the agreed order for temporary shelter care, the respondent agreed to provide a sample for DNA testing to determine paternity. The DNA test results proved that the respondent is Trazilyan B.'s biological father. The trial court's docket entry of

_____

[1]The respondent cites to the time limitations set forth in "705 ILCS 405/12-4" numerous times throughout his brief. However, there is no "705 ILCS 405/12-4," and in light of his argument and the State's response, we presume that the respondent is referring to the time limitations set forth in section 2-14 of the Act. 705 ILCS 405/2-14 (West 2020).

[2]We note that the record in this case contains no transcripts of any proceedings in this matter until the commencement of the adjudicatory hearing on May 18, 2021. As a result, much of the background information was gathered from the trial court's docket entries as stated in the common law record.

2

November 26, 2019, indicates that the trial court set the matter for an adjudicatory hearing on January 7, 2020.

¶ 5    On January 7, 2020, the parties appeared, and on the motion of Trazilyan B.'s mother,[3] the case was reset to March 17, 2020, for a pretrial conference. Although the docket entry for January 7, 2020, indicates that a court reporter was present for the hearing, there is no transcript included in the record and the record is devoid of any objection to the setting of the March 17, 2020, court date.

¶ 6    There is no docket entry for March 17, 2020. However, the docket entry for March 27, 2020, indicates that the pretrial conference was reset to June 16, 2020. On April 21, 2020, the matter was reset to July 21, 2020. On May 21, 2020, the matter was reset to July 30, 2020, and on July 30, 2020, the matter was reset again to October 6, 2020. There is no docket entry for October 6, 2020, but on October 9, 2020, the case was reset to November 17, 2020. The docket entry for November 17, 2020, indicates that a court reporter was present, however no transcript was included in the record on appeal. The docket entry indicates that the parties, including the respondent and his counsel, appeared in court, and that the matter was reset to January 19, 2021.

¶ 7    On January 19, 2021, the parties appeared via Zoom[4] with a court reporter present, however no transcript was included in the record on appeal. The public defender was discharged as counsel for the respondent, and the trial court appointed the respondent's

---

[3]Trazilyan B.'s biological mother was also a respondent in the circuit court proceedings but is not a party to this appeal.

[4]"Zoom" is a video conferencing platform.

current counsel on appeal. The matter was once again reset to March 16, 2021. On March 16, 2021, the parties appeared, and the matter was set for an adjudicatory hearing on May 4, 2021. On May 4, 2021, due to one of the counsels being ill, the matter was reset to May 18, 2021. At no point in time during any of the aforementioned settings does the record indicate any objection to the continuances.

¶ 8     On May 18, 2021, the parties appeared for the adjudicatory hearing. This setting is the first appearance for which a transcript appears in the record of proceedings on appeal. On the oral motion of the guardian *ad litem*, the trial court removed the matter from Lutheran Child and Family Services of Illinois (LCFS), and ordered the matter be returned to DCFS to provide services or reassign to a contracting service provider other than LCFS.

¶ 9     Thereafter, counsel for Trazilyan B.'s mother and the respondent made a joint oral motion to dismiss the petition for adjudication of wardship, arguing that the adjudicatory hearing was untimely, and that the docket did not reflect any orders where the trial court found good cause to have been shown to continue the hearing past the required 90 days. The respondent argued that pursuant to section 2-14(b) of the Act (705 ILCS 405/2-14(b) (West 2020)), an adjudicatory hearing must be held within 90 days after service of the petition for adjudication of wardship, in this case November 26, 2019, and it may be continued one time for a period not to exceed 30 days upon good cause shown. The respondent noted that 90 days after the date of service of the petition, which occurred at the shelter care hearing, would have been in February 2020. The respondent further noted that an additional 30 days after that would have been in March 2020, both of which would have been prior to the global COVID-19 pandemic.

4

¶ 10    In response, the State noted that at the second setting in this case, on January 7, 2020, the parties appeared, and on the motion of Trazilyan B.'s mother, the case was reset by agreement to March 17, 2020, and by March 17, 2020, they were "well within the grips of the pandemic," and "very quickly thereafter the [c]ourt went from almost a complete shut down to a total shutdown," with virtual appearances occurring thereafter. The State further indicated that the Illinois Supreme Court gave trial court judges "unprecedented authority" to adjust schedules due to the pandemic and argued that the trial court's many rescheduling of this case was therefore authorized. Additionally, the State noted that the case had been "somewhat impacted, if not significantly impacted, by a *** veritable almost musical chairs, out of our control, of changing employment of the various attorneys that have been assigned to this case." The State added that at least once during the relevant time period, the case was continued due to Trazilyan B.'s mother being in rehabilitation. The guardian *ad litem* agreed with the State's arguments and added that it would not be in Trazilyan B.'s best interests to dismiss the petition this far into the case.

¶ 11    In response, the respondent noted that he was a nonoffending parent, and that there was nothing in the petition that indicated he did anything other than have a child with Trazilyan B.'s mother. The respondent further argued that the issues cited by the State "would be wonderful issues to bring before the [c]ourt in the time period of 120 days so there could be good cause shown"; however, no motions raising any of those issues were ever filed. The respondent went on to argue that the State should not be permitted to retroactively make those arguments 18 months later. The respondent likened the matter to the two-year statutory requirements in a personal injury case where it would not be

5

permitted, 18 months after the statute had run, to argue that there was good cause shown as to why a party should be able to file a case three years later. Additionally, the respondent pointed out that the governor's first executive order regarding COVID-19,[5] which suspended most, if not all, of the trial court's operations, did not go into effect until April 30, 2020, which was 44 days after the March 17, 2020, hearing.

¶ 12    Shortly thereafter, the trial court denied the respondent's joint oral motion to dismiss, noting the removal of LCFS, the multiple changes in attorneys in the case, and the pandemic. The trial court also disagreed with the respondent's personal injury case analogy, stating that if a party misses the statute of limitations there, the case is dismissed with prejudice. Whereas in this case, the matter would be dismissed without prejudice and the State could refile the matter the next day. The trial court further noted that it is obligated to get the best result for Trazilyan B. With respect to the pandemic, the trial court stated that it may not have been within the statutory time limits to continue this case, but that it was an unprecedented event in the United States, and for a while, the trial courts were only allowed by supreme court rule to conduct emergency type hearings. The trial court also noted that, over time, the courts developed the ability to hear cases virtually. "So even though that Governor's Executive Order may not have come down after these time limits passed, it has been a significant factor." Additionally, the trial court noted that "for a period of time [DCFS,] rightfully so[,] would not let the caseworkers visit in the home, would not let these people have personal contact. Everybody was supposed to social distance, stay

_____

[5]Executive Order 2020-32 (COVID-19 Executive Order No. 30).

home, don't go to work, and wear a mask." As such, the trial court, in consideration of the totality of the circumstances, denied the respondent's joint oral motion to dismiss.[6]

¶ 13                                    II. ANALYSIS

¶ 14    Turning to the merits, the respondent raises one issue on appeal—whether the trial court erred in denying the respondent's oral motion to dismiss based on the fact that the hearing on the petition for adjudication of wardship was heard 539 days after the filing of the petition, and outside the time limitations set forth in section 2-14 of the Act (705 ILCS 405/2-14 (West 2020)). The State does not dispute that the adjudicatory hearing was formally commenced far beyond the 90-day or 120-day limits set forth by section 2-14 of the Act (*id.*). As a result, we are called on to determine whether the trial court judge in this case had the discretion to proceed with an adjudicatory hearing after the statutory time limits had run out. See *In re S.G.*, 277 Ill. App. 3d 803, 807 (1996), *aff'd*, 175 Ill. 2d 471 (1997).

¶ 15    Section 2-14 of the Act provides the mandated timeline for the commencement of an adjudicatory hearing. 705 ILCS 405/2-14 (West 2020). "When a petition is filed alleging that the minor is abused, neglected or dependent, an adjudicatory hearing shall be commenced within 90 days of the date of service of process upon the minor, parents, any guardian and any legal custodian ***." *Id.* § 2-14(b). Section 2-14 further provides that should a party seek a continuance, he or she must file a written motion no later than 10

---

[6]As pointed out in the State's brief, the respondent raised an oral motion to dismiss at the July 20, 2021, dispositional hearing, arguing that the dispositional hearing was also untimely. On appeal, however, the respondent has confined his argument to the trial court's order denying his motion to dismiss the petition for adjudication of wardship. As such, our decision is also limited to whether the trial court properly denied counsel's oral motion to dismiss the petition for adjudication of wardship.

days prior to the adjudicatory hearing. *Id*. § 2-14(c). Alternatively, the trial court may continue the hearing on its own motion. *Id*. In either circumstance, the continuance may only be for a period not to exceed 30 days, must be based upon good cause shown, and must be "consistent with the health, safety and best interests of the minor." *Id*. Further, only one such continuance is allowed. *Id*. When the trial court grants a continuance, it is required to "enter specific factual findings to support its order, including factual findings supporting the court's determination that the continuance is in the best interests of the minor." *Id*. The term "good cause" must be strictly construed and be in accordance with Illinois Supreme Court Rule 231 (eff. Jan. 1, 1970), which lays out the procedure and manner for obtaining a continuance of a trial setting. Additionally, "[n]either stipulation by counsel nor the convenience of any party constitutes good cause." *Id*. "If the adjudicatory hearing is not heard within the time limits required by subsection (b) or (c) *** , upon motion by any party the petition shall be dismissed without prejudice." *Id*. The time constraints in section 2-14 of the Act for the commencement of an adjudicatory hearing are waivable; however, they may only be waived by the consent of all parties and the approval of the trial court. *Id*. § 2-14(d).

¶ 16    Here, the respondent argues that because he was served and given notice to appear for a temporary shelter care hearing on November 26, 2019, the adjudicatory hearing should have been held no later than February 24, 2020. The respondent further argues that if any party or the trial court had followed the procedure set forth in section 2-14(c) (*id*. § 2-14(c)), the adjudicatory hearing should not have been held any later than March 25, 2020. The respondent argues that because the adjudicatory hearing was not held until May

8

18, 2021, which was 539 days after the filing of the petition for adjudication of wardship, the petition for adjudication of wardship should have been dismissed. Therefore, the respondent argues that the trial court's denial of the respondent's oral motion to dismiss at the May 18, 2021, hearing was erroneous.

¶ 17    In support of his argument, the respondent cites to *In re S.G.*, 175 Ill. 2d 471 (1997). In that case, four separate petitions for adjudication of wardship were filed on April 28, 1992, for each of the mother's four children. *Id*. at 474. A temporary custody hearing was conducted the same day, and custody was temporarily removed from the mother. *Id*. at 474-75. When the mother was released from jail after her criminal charges were dismissed, she requested a second temporary custody hearing, which occurred on June 22 and June 23, 1992. *Id*. at 475. The children's fathers were given notice by publication, which were defaulted on September 1, 1992. *Id*. Following a continuance for good cause from the original November 10, 1992, trial date, the adjudicatory hearing began on December 15, 1992. *Id*. at 476. The appellate court in *In re S.G.* summarized the proceedings between September 1, 1992, and the March 12, 1993, determination of neglect as follows:

> "Space does not permit us to provide details of the proceedings on each of the 21 occasions this case was heard between April 28, 1992, and March 12, 1993, when the adjudication hearing was completed. Suffice it to say that the trial judge kept trying to find time for the hearing, [mother] continuously asked for a trial, the State answered ready, lawyers made motions and objections, and the case was heard piecemeal after a perfunctory beginning on December 15, 1992, finally getting under way on March 8, 1993." *In re S.G.*, 277 Ill. App. 3d at 806.

9

¶ 18    On March 8, 1993, the trial court judge heard and denied the mother's motion to dismiss the petitions. *Id*. In so doing, the trial court stated:

> " 'This case is unusual because of the substitution of attorneys, because of the great number of pretrial motions that were filed on behalf of the children and other parties as well as by the fact that the lawyers have suggested that there would be as many as 10 to 12 witnesses testifying in this case.
>
> In fact, I've blocked out this day and two subsequent days on this court calendar to hear this case because of its complexity and because of the adversarial stances that have been taken by the parties. With 4000 cases on the Court call, it's just impossible to hear 10-, 12-witness cases and take 20 hours of court time to try them without scheduling in this manner.
>
> Each of the continuances that was had in this case was done with the best interest of the children in mind. Each was done out of necessity. And we certainly believe that the spirit of the statute has been followed.
>
> I would also state unequivocally that it would not be in the best interest of these children to dismiss these petitions at this time. The motion to dismiss filed by the public defender on behalf of the mother and joined in by counsel and GAL for [one of the children] is respectfully denied.' " *Id*.

¶ 19    Thereafter, the mother appealed from the adjudication of wardship. *In re S.G.*, 175 Ill. 2d at 478. The appellate court reversed, concluding that the plain language of section 2-14 requires the dismissal without prejudice of any petition in which the adjudicatory

hearing is not completed within the statutory time period. *In re S.G.*, 277 Ill. App. 3d at 809-11.

¶ 20    On appeal, the Illinois Supreme Court affirmed the appellate court's judgment, holding that the time periods outlined in section 2-14 of the Act that required an adjudicatory hearing be held within 90 days of service of process upon the parties were mandatory, and the lower court was therefore obligated to dismiss the petition for adjudication of wardship that was not completed in the prescribed time frame. *In re S.G.*, 175 Ill. 2d at 483. The *In re S.G.* court reasoned that section 2-14 of the Act has an explicit statement of policy that delay could cause harm to minors, and the section gave direction as to how time periods were calculated and the manner of granting continuances. *Id*. at 481. The supreme court emphasized that section 2-14 contained a specific provision for dismissal without prejudice of any petition where an adjudicatory hearing was not held within the requisite time constraints, demonstrating legislative intent to make the time period of section 2-14 mandatory. *Id*. at 481-82.

¶ 21    In response to the respondent's argument, the State argues that the record does not show whether a waiver did *not* occur in this case, pursuant to section 2-14(d) of the Act (705 ILCS 405/2-14(d) (West 2020)). The State cites our recent decision in *In re J.T.*, 2021 IL App (5th) 210066-U, as persuasive authority for its argument that this court cannot determine, in absence of a complete record, that the parties did not waive the time limits required by section 2-14(d) of the Act. We agree.

¶ 22    In *In re J.T.*, this court addressed a similar issue concerning the timeliness of the adjudicatory hearing. *In re J.T.*, 2021 IL App (5th) 210066-U; see also amended Ill. S. Ct.

11

R. 23(e)(1) (eff. Jan. 1, 2021) (stating nonprecedential orders under Rule 23(b) may be cited for persuasive purposes). There, because the record was devoid of any transcripts of the relevant hearing on the motion to continue or any affidavit from the respondent's counsel disputing a waiver of the time limits, this court presumed that the order to continue the hearing entered by the trial court was in conformity with the law and had a sufficient factual basis, thereby refusing to find that the parties had not agreed to waive the time limit. *In re J.T.*, 2021 IL App (5th) 210066-U, ¶ 41; see also *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 319 (2003) (holding that the appellant has the burden of presenting a sufficiently complete record on appeal of the proceedings at trial to support a claim of error and, in the absence of such a record on appeal, the reviewing court will presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis).

¶ 23    In *In re J.T.*, the trial court's order denying the motion to dismiss was silent as to the reasons why it denied the motion. *In re J.T.*, 2021 IL App (5th) 210066-U, ¶ 29. The trial court in the present case, however, *did* discuss its reasons for denying the respondent's joint oral motion to dismiss. Those reasons cited by the trial court were largely aimed at the existence, or lack thereof, of good cause for the continuances, which is how the parties framed their arguments in the trial court. Despite this factual distinction between *In re J.T.* and the present case, the trial court's reasoning for its denial of the motion here also did not include any reference to whether the parties waived the time limit pursuant to section 2-14(d) of the Act. As a result, because the record remains silent as to waiver under section 2-14(d) of the Act, and there being no affirmative record showing no such waiver occurred,

it must be presumed that the adjudicatory hearing held beyond the 90-day timeframe was in conformity with the law.

¶ 24    In this case, and as noted previously, the record on appeal contains no transcripts of any proceedings in this matter until the commencement of the adjudicatory hearing on May 18, 2021. As the State correctly points out, the burden of providing a complete record on appeal is on the appellant. See *People v. Leeper*, 317 Ill. App. 3d 475, 482 (2000); *Midstate Siding & Window Co.*, 204 Ill. 2d at 319; *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). In the absence of such a record on appeal, "it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis," and "any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch*, 99 Ill. 2d at 392.

¶ 25    The record here, which was provided by the respondent, does not show that the many continuances were not by the consent of all parties and the approval of the trial court. Further, there is nothing in the record or in the respondent's brief to indicate that the respondent, or any party to the case for that matter, ever objected to the continuances until the respondent's joint oral motion to dismiss was made on the same day as the adjudicatory hearing. The respondent also did not provide any support in the form of an affidavit or other pleading from his appointed counsel to dispute that the parties agreed to a waiver of the time limit. Absent a complete record on appeal, we must presume that the trial court's orders were entered in conformity with the law and had a sufficient factual basis. Consequently, we must presume that any continuances were granted in conformity with the law, and the same presumption applies to the order denying the respondent's oral

motion to dismiss. See *Midstate Siding & Window Co.*, 204 Ill. 2d at 319. Having concluded that the trial court did not err in denying the respondent's oral motion to dismiss, we affirm the trial court's July 20, 2021, dispositional order.

¶ 26                                  III. CONCLUSION

¶ 27    For the foregoing reasons, we affirm the judgment of the circuit court of Wayne County.


¶ 28    Affirmed.