2021 IL App (1st) 201393-U
No. 1-20-1393

FIRST DIVISION
November 1, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| *In re* GUARDIANSHIP OF KARLA YUREIMI ORDONEZ GOMEZ, a Minor. | ) ) ) | Appeal from the Circuit Court of Cook County. |
| (Karla Yureimi Ordonez Gomez, | ) ) | |
| Minor-Appellant). | ) ) ) | No. 20 P 002734 |
| | ) ) | |
| | ) ) ) | The Honorable Stephanie K. Miller, Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Coghlan and Hyman concur in the judgment.

**ORDER**

¶ 1    *Held:* The circuit court lacked jurisdiction to consider the amended petition seeking appointment of a guardian for the appellant, as the petition was filed after the appellant had turned 18 years of age and was no longer a "minor" under the Probate Act of 1975. Accordingly, we vacate the circuit court's orders denying that petition and the corresponding motion to reconsider, and we dismiss the appeal.

¶ 2    Karla Yureimi Ordonez Gomez (Karla) appeals from (1) the circuit court's order denying an "Amended Petition for Guardian of Minor" seeking to retroactively appoint a guardian for Karla shortly after Karla's 18th birthday and (2) the circuit court' denial of the motion to reconsider the

denial order. For the following reasons, we conclude that the circuit court lacked jurisdiction to consider the petition, as the court was not empowered to appoint a guardian for a person who was already 18 years old and no longer a "minor" under the Probate Act. Accordingly, the circuit court's orders must be vacated.

¶ 3                                              BACKGROUND

¶ 4        This appeal concerns the denial of a petition that sought appointment of a guardian for Karla shortly after Karla turned 18 years old. The record reflects that the Karla sought guardianship, in part, to make her eligible for Special Immigrant Juvenile (SIJ) status under the federal Immigration and Nationality Act of 1990 ("INA"). 8 U.S.C. 1101(a)(27)(J). However, this specific appeal is from the denial of a guardianship petition.

¶ 5        The record reflects that Karla was born in Guatemala in June 9, 2002 and eventually moved to Chicago. Guadulupe Cortez, identified as a "family friend" of Karla, sought to be appointed as Karla's guardian.

¶ 6        At 9:42 p.m. on June 7, 2020 (less than 48 hours before Karla's 18th birthday), Cortez's counsel sent an email to the administrative assistant to the Presiding Judge of the Probate Division, requesting an emergency guardianship hearing to be held the following day. In the email, Cortez's counsel indicated that it had filed a petition for guardianship and, in addition, would be "filing a Motion for SIJS findings." The email attached a number of documents, including a petition seeking appointment of Cortez as Karla's guardian; consent forms from Karla's parents, and a "Verified Motion for Special Immigrant Juvenile Status (SIJS) Findings Pursuant to 755 ILCS 5/11-5.5."

¶ 7        The original guardianship petition was electronically file-stamped at 12:00 a.m. on June 8, 2020. In that petition, Cortez alleged that Karla lived alone in Chicago "with her own minor child." The petition alleged that Karla had been "abused by her father in Guatemala" and "left Guatemala

to live with [her] mother in US where she has been abandoned and neglected." The original petition attached an exhibit that identified Karla's parents and stated her mother's address in Cicero, Illinois, and her father's address in Guatemala.

¶ 8     Cortez's counsel's email to the court also attached a proposed "Verified Motion for Special Immigrant Juvenile Status (SIJS) Findings Pursuant to 755 ILCS 5/11-5.5" (motion for SIJS findings). That motion explained that, in order for a juvenile to be eligible to apply for SIJ status, a state court must first make specified findings, including that: (1) the minor is under age 21; (2) the minor is unmarried; (3) the minor is present in the United States; (4) the minor has been declared dependent on a juvenile court located in the United States or has been legally committed to or placed under the custody of a State agency or department or an individual or entity appointed by a State or juvenile court located in the United States; (5) reunification with one or both of the minor's parents is not viable due to abuse, neglect, abandonment or a similar basis under state law. See 8 U.S.C. § 1101(27)(J).

¶ 9     The motion for SIJS findings included a "Statement of Facts" which recited that Karla lived with both of her parents in Guatemala until she was approximately two years old, when her mother left for the United States.  Karla continued to live with her father, who was physically abusive to Karla and her three older sisters. After her sisters left the home, Karla's relationship with her father "changed for the worse."  Karla's father held "very strict beliefs of a woman's role in the family" and what girls could do. When Karla "did not follow his rules, he would hit her with a belt or with his fists."  Karla's father told her she had to take care of the household, and by age 9 she was "responsible for cleaning the house, making dinner, and washing the dishes."  She was not allowed to socialize with friends and was rarely allowed outside. Karla's father was "emotionally abusive,

telling her that her mother did not like her and that if she had not been born, her mother would not have left."

¶ 10    According to the motion, after a "particularly harsh beating when [Karla] was 14 years old, she decided to leave her father's house and come to the U.S." Karla was pregnant at the time. Karla entered the United States on or about July 4, 2017, and was "picked up by immigration officials" and "designated an unaccompanied minor." She was eventually reunited with her mother in Chicago, where two of Karla's sisters also reside.

¶ 11    Karla's daughter was born in December 2017. Karla lived with her mother and her mother's boyfriend until about August 2019. Karla and her daughter moved out after they witnessed domestic violence, and Karla supported herself by working as a babysitter. Karla "tried to register for school but has not been able to do so because she has been unable to obtain her school records in Guatemala, due in part to the lack of cooperation from her mother."

¶ 12    The motion for SIJS findings stated that Karla was "afraid to return to Guatemala because she does not know how she and her daughter could live there safely." The motion contemplated Cortez's appointment as Karla's guardian under the Probate Act and requested findings for Karla to be eligible for SIJ status, including that Karla had been "been placed under the custody of an individual"; that reunification with her parents was not viable "due to abuse, abandonment, and/or neglect"; and that it was in Karla's best interest to remain in the United States.

¶ 13    On June 8, 2020, the court (Hon. Stephanie Miller) responded to the prior evening's email from Cortez's counsel requesting an emergency hearing. The court stated that there were "several issues with the petition that preclude it from being heard and granted today." Specifically, the court listed three reasons. First, "The petition alleges that the minor lives on her own. That may be a basis for emancipation but not for guardianship filed by someone who does not have custody."

Second, "[t]he petition alleges that that [sic] the mother has abandoned the minor yet she has allegedly signed a consent." Third, the court stated that neither of the parental consents submitted with the petition was notarized. The court stated: "It is my understanding that this petition is being filed for findings here for purposes of filing federally regarding immigration. While I strongly support these efforts routinely, I am unable to hear or grant due to the above issues."

¶ 14    Karla turned 18 years old on June 9, 2020. On June 11, 2020, Cortez's counsel filed an "Amended Petition for Guardian of Minor" (the amended petition) and a "Verified Motion to Appoint Guardian *Nunc Pro Tunc*" seeking an order appointing Cortez as guardian "effective June 8, 2020" (*i.e.*, the day before Karla's 18th birthday). The factual allegations of the amended petition were largely similar to those in the original petition, except that it added that Cortez "has assisted and will assist [Karla] with securing medical & other needs especially where English fluency is required and emotional support." On the same date, Cortez also filed "Notice of Verified Motion for SIJS Findings *Nunc Pro Tunc*" as well as consents signed by Karla's parents. Cortez's counsel emailed these submissions directly to Judge Miller, again requesting an emergency hearing.

¶ 15    The court responded directly to counsel's email, stating: "I have reviewed your petitions and done my own research. I can not find any authority to grant jurisdiction to enter any order in a minor guardianship courtroom for someone who is 18 years of age, *nunc pro tunc* or otherwise." The court invited counsel to "forward any authority for this before the matter can be scheduled for hearing."

¶ 16    On August 17, 2020, Cortez submitted memoranda of law to the court arguing that, notwithstanding the fact that Karla had turned 18, the court still had authority to appoint a guardian and make SIJS findings. Cortez acknowledged that the Probate Act defines a "minor" to be

someone under the age of 18, but argued that the circuit court could "use its equitable power to fill that gap and enter SIJS findings" for Karla.

¶ 17    On August 18, 2020, Cortez's counsel appeared before the court in a Zoom teleconference.[1] Counsel reaffirmed Cortez's position that the court had the authority to hear and grant the amended guardianship petition *nunc pro tunc*. The court dismissed the amended petition because, *inter alia*, Cortez "had never had physical custody" of Karla and thus did not have standing to file the petition. The court stated that "Illinois case law supported the requirement that a non-parent seeking guardianship have physical custody of the minor." The court also indicated that "because the Illinois Probate Act grants the Court authority to make SIJS findings solely within the context of a guardianship proceeding, and there being no valid guardianship proceeding" in this case, the court had no authority to rule on the Verified Motion for SIJS Findings.

¶ 18    On August 18, 2020, the court entered a written order denying the amended petition. In the written order, the court began its analysis by noting that under the Probate Act, a minor is defined as a person who has not attained the age of 18 years. The court stated that "Any guardianship of a minor must be completed prior to the minor reaching his/her 18th birthday or the Court loses jurisdiction." The court's order did not say anything further about its jurisdiction, but proceeded to cite a number of reasons to deny the amended petition.

¶ 19    The court's order noted that by statute, it cannot appoint a person as guardian if that person has been convicted of a felony involving harm or threat to a child (755 ILCS 5/11-3(a)(5) (West 2020)), or if the person was found to have caused or substantially contributed to abuse or neglect of a minor pursuant to the Juvenile Court Act of 1987 (755 ILCS 5/11-5(d) (West 2020)). The

---

[1] Although there is no transcript of proceedings, counsel prepared a bystander's report summarizing the proceedings of the videoconferences with the trial court. That report was approved by the trial court and is included in the record on appeal.

court stated: "Without providing adequate notice (even for an emergency petition) to run background checks for the petitioner, it was impossible for the Court to make the appropriate findings regarding the petitioner." The court also found that neither of the consents signed by Karla's mother and father that were submitted on June 8, 2020 were notarized, as required by the Probate Act. 755 ILCS 5/11-5(b)(i)(3). The court also found that the parental consents submitted after Karla's 18th birthday were insufficient because they lacked proper notarization. The court further noted that the amended petition did not allege that Karla "was homeless or in need of assistance" or that she was "not being provided for." The court further noted that the amended petition "requests * * * appointment of a guardian * * * for a period of time that would legally amount to 24 hours." The August 18, 2020 written order thus denied the amended petition seeking appointment of Cortez as Karla's guardian.

¶ 20 On September 17, 2020, Cortez filed a motion to reconsider the court's August 18, 2020 ruling. Cortez's counsel subsequently informed the court that it had not received a copy of the written order, and for that reason the matter was continued multiple times in October and November 2020.

¶ 21 At a videoconference on November 30, 2020, Cortez's counsel indicated she had reviewed the August 18, 2020 written order and presented additional arguments in support of Cortez's motion to reconsider that order. Counsel argued that the consents and background checks relied upon the by trial court were not statutorily required. Counsel also argued that notarized parental consents were not necessary, since the allegations in the Verified Motion for SJIS Findings established that Karla's parents were unwilling or unable to care for Karla. Counsel additionally argued that, although Cortez did not live with Karla, Cortez could still fulfill her guardianship obligations and that Karla would benefit from the guardianship. Counsel reiterated that a guardianship would allow Karla to obtain SIJ status, which would make her eligible for permanent legal residency.

¶ 22    After hearing Cortez's counsel's arguments, the court indicated that background checks for the proposed guardian were required. The court also held that it could not grant guardianship without notarized consents from, or notice to, Karla's parents. The court noted that while it did not believe it was authorized to grant the petition under these circumstances, it welcomed further direction from the appellate court. Thus, on November 30, 2020, the court entered an order denying the motion to reconsider the August 18, 2020 order denying the amended petition for guardianship.

¶ 23    On December 29, 2020, Karla filed a notice of appeal which specified that she sought to challenge: (1) the August 18, 2020 order denying the amended petition for guardianship and (2) the November 30, 2020 order denying the motion to reconsider that denial. In the notice of appeal, Karla noted that she was "now age 18 but [was] formerly the minor" in the guardianship proceedings. On this court's own motion, the case was taken on Karla's brief only.

¶ 24                                    ANALYSIS

¶ 25    On appeal, Karla acknowledges that she turned 18 years old on June 9, 2020. However, she contends that she has standing and that mootness does not bar this appeal. On the merits, she proceeds to argue that the trial court erred in denying the amended petition because (1) the Probate Act does not require completion of background checks for a proposed guardian; (2) notarized consents from Karla's parents were not necessary, given the facts alleged in the amended petition and her motion for SIJS findings; (3) the trial court erred to the extent it denied the amended petition because Karla did not live with Cortez, the proposed guardian. As a remedy, Karla urges that we should remand to the trial court to hold an evidentiary hearing on the amended petition, adjudicate her motion for SIJS status findings, and enter corresponding orders to be "effective as of June, 8, 2020." That is, Karla seeks that we allow the trial court to enter orders retroactive to the day before she turned 18 years old.

¶ 26    Before we can consider mootness, standing, or the merits of Karla's other arguments, we have an independent duty to assess whether we have jurisdiction in this appeal. *People v. Lewis*, 234 Ill. 2d 32, 36-37 (2009) ("courts of review have an independent duty to consider jurisdiction even if a jurisdictional issue is not raised by the parties. [Citations.]); *Secura Ins. Co. v. Illinois Farmers Ins. Co.*, 232 Ill. 2d 209, 213 (2009) ("A reviewing court must ascertain its jurisdiction before proceeding in a cause of action, regardless of whether either party has raised the issue. [Citations.]").

¶ 27    Significantly, we clarify that Karla is *not* appealing the denial of the initial guardianship petition that was filed just before Karla's 18th birthday. Rather, Karla appeals the August 2020 order denying the *amended* petition for guardianship—filed on June 11, 2020, after Karla turned 18 years old—and the denial of the corresponding motion to reconsider.

¶ 28    Karla's notice of appeal was filed within 30 days of the denial of her motion to reconsider. Thus, her notice of appeal was timely. Ill. S. Ct. R. 303(a)(1) (eff. July 17, 2017).

¶ 29    The jurisdictional analysis does not end there, however. In order to assess our appellate jurisdiction, we must also consider whether the *trial court* had jurisdiction to consider the amended petition. Our supreme court has explained: "A ruling made by the circuit court in the absence of subject matter jurisdiction is void. [Citation.]. [Citation]." *People v. Flowers*, 208 Ill. 2d 291, 306-07 (2003); see also *In re M.M.*, 156 Ill. 2d 53, 64 (1993) ("Subject matter jurisdiction refers to the power of the court to adjudge concerning the general question involved [citation] as well as the power to grant the particular relief requested. [Citations.] Every act of the court beyond that power is void. [Citation.]"). If the circuit court lacks jurisdiction, then the appellate court cannot consider the merits of the appeal. See *Flowers*, 208 Ill. 2d at 307 (where circuit court lacked jurisdiction, "the only matter properly before the appellate court was the circuit court's lack of jurisdiction over

Flowers' untimely Rule 604(d) motion"); *Kyles v. Maryville Academy*, 359 Ill. App. 3d 423, 431 (2005) ("The lack of jurisdiction in the circuit court, in turn, affects our own jurisdiction in that we are then limited to considering only the lack of jurisdiction below, and we may not consider the substantive merit of the circuit court's unauthorized actions. [Citation.]").

¶ 30    In order to assess whether we can reach the merits of this appeal, we must ascertain whether the circuit court had jurisdiction to hear the amended petition, notwithstanding that it was filed and decided after Karla had reached 18 years of age. For the following reasons, after considering the Probate Act and relevant case law, we conclude the circuit court did not have jurisdiction to consider the amended petition. We see nothing in the Probate Act or case law indicating that the circuit court had subject matter jurisdiction to decide a petition seeking appointment of a guardian for someone who had already reached the age of 18, i.e. someone who was no longer a "minor."

¶ 31    The relevant language of the Probate Act clearly contemplates guardianship only for a "minor." Section 11-5(a) provides: "Upon the filing of a petition for the appointment of a guardian or on its own motion, the court may appoint a guardian of the estate or of both the person and estate, of a minor, or may appoint a guardian of the person only of a minor or minors, as the court finds to be in the best interest of the minor or minors." 755 ILCS 5/11-5(a) (West 2020). Section 11-1 of the Probate Act defines the term "minor" to mean "a person who has not attained the age of 18 years. A person who has attained the age of 18 years is of legal age for all purposes except as otherwise provided in the Illinois Uniform Transfers to Minors Act." 755 ILCS 5/11-1 (West 2020).

¶ 32    Section 11-5(b) of the Probate Act sets forth additional requirements before a court may grant a guardianship when the minor has one or more living parents with known whereabouts, as such parents are presumed to be willing and able to care for the minor. 755 ILCS 5/11-5(b) (West

2020).[2] Our supreme court has explained: "By allowing a guardianship petition to proceed to a hearing on the merits over the wishes of a parent only when the parent has been established to be unwilling or unable to carry out day-to-day child-care decisions, the Probate Act respects the superior rights of parents while also insuring to protect the health, safety, and welfare of children." *In re R.L.S.*, 218 Ill. 2d 428, 441 (2006); see also *In re A.M.*, 2013 IL App (3d) 120809, ¶ 34 (reversing order granting guardianship as "void *ab initio*" where trial court proceeded on a petition without a separate hearing on respondent's fitness as a parent; "Neither the legislature nor the supreme court has equivocated on the issue of when a trial court has jurisdiction to hear a guardianship case under the Probate Act: after, and only after, the court determines that the parent is unfit to care for the child(ren)." *Id.* ¶ 36.

¶ 33    Karla does not dispute that, upon her 18th birthday on June 9, 2020, she was no longer a minor under the Probate Act. Nor does she suggest that any provision of the Probate Act permits the circuit court to retroactively appoint a guardian for someone 18 or older, to be effective *nunc pro*

---

[2] That section provides: "The court lacks jurisdiction to proceed on a petition for the appointment of a guardian of a minor if it finds that (i) the minor has a living parent * * * whose parental rights have not been terminated, whose whereabouts are known, and who is willing and able to make and carry out day-to-day child care decisions concerning the minor, unless: (1) the parent or parents voluntarily relinquished physical custody of the minor; (2) after receiving notice of the hearing * * *, the parent or parents fail to object * * *; (3) the parent or parents consent to the appointment as evidenced by a written document that has been notarized and dated, or by a personal appearance and consent in open court; or (4) the parent or parents, due to an administrative separation, are unable to give consent to the appointment in person or by a notarized, written document * * *; or (ii) there is a guardian for the minor appointed by a court of competent jurisdiction. There shall be a rebuttable presumption that a parent of a minor is willing and able to make and carry out day-to-day child care decisions concerning the minor, but the presumption may be rebutted by a preponderance of the evidence." 755 ILCS 5/11-5(b) (West 2020).

*tunc* to a date before that person reached the age of majority. Thus, nothing in the statute suggests that the court had authority to consider the amended petition, which was filed after Karla was no longer a "minor."

¶ 34    The jurisdictional analysis does not end there, however. We recognize that a circuit court's power to appoint a guardian is not wholly dependent upon the Probate Act, but is also derived from the common law. As our supreme court has recognized, "the circuit courts of this State have an inherent plenary power to appoint guardians of minors independent of any authority given to the courts by the legislature. [Citations.]" *In re M.M.*, 156 Ill. 2d 53, 63 (1993); see also *In re Estate of Green*, 359 Ill. App. 3d 730, 737 (2005) ("Although a court's power to appoint the guardian of a minor is now conferred statutorily by the Probate Act, such authority also existed at common law. [Citations.]")). That is, "a trial court's power to appoint the guardian of a minor does not transcend its traditional common law authority; it exists independently of any statute, including the Probate Act." *Id.* (citing *M.M.,* 156 Ill. 2d at 64).

¶ 35    Accordingly even if the Probate Act does not provide for a certain form of guardianship, the circuit court may still have jurisdiction to implement it, based on its common law authority. See *In re Estates of Herrod*, 254 Ill. App. 1061, 1064 (1993) (reversing order denying petition for appointment of "standby guardian" to care for children after petitioner became unable to do so, even when such relief was "not expressly provided for in the Act," since "the circuit courts have plenary jurisdiction over the persons and estates of minors which derives from common law and is independent of any authority given by the legislature in the Act. [Citations.]").

¶ 36    In light of these principles, we have considered whether any Illinois precedent suggests that a circuit court's inherent common law authority to appoint a guardian encompasses power to grant the relief sought by the amended petition in this case. That is, we have considered whether the

common law power enables a circuit court to appoint a guardian "*nunc pro tunc*" for a non-disabled person who, by statute, is no longer a "minor." We find no basis for that proposition.

¶ 37    We recognize that, as a general matter, probate courts are "empowered to enter a judgment based in equity. [Citation.]" *In re Estate of Zagaria*, 2013 IL App (1st) 122879, ¶ 44; *Perry v. Estate of Carpenter*, 396 Ill. App. 3d 77, 86 (2009) (" 'It is well settled that the probate court may give relief of an equitable nature when justice so requires.' " (quoting *Berber v. Hass*, 57 Ill. App. 2d 109, 113 (1965)). However, in describing the specific power to appoint a guardian, our precedent consistently refers to that power in the context of protecting "minors," "children" or "infants." See, *e.g.*, *In re M.M.*, 156 Ill. 2d at 63 ("the circuit courts of this State have an inherent plenary power to appoint guardians of minors independent of any authority given to the courts by the legislature. [Citations.]"); *People ex rel. Ryan v. Sempek*, 12 Ill. 2d 581, 584 (1958) ("The jurisdiction of a court of chancery over the persons and property of infants had its foundation in the prerogative of the crown flowing from its general power and duty, as *parens patriae*, to protect those who have no other lawful protector. Whenever the parents are unable to properly care for their children the court of chancery has inherent power to deprive them of custody and appoint a suitable person to act as guardian. [Citation.]"); *In re Estate of Green*, 359 Ill. App. 3d at 737 ("Courts of equity have plenary jurisdiction over the persons and estates of infants, and will in the exercise of that jurisdiction, cause to be done what may be necessary to preserve their estates and protect their interest." (Internal quotation marks omitted.")).

¶ 38    We have not identified any Illinois authority suggesting that the same equitable power to appoint a guardian for a minor may be retroactively applied after the minor has reached adulthood. This is not surprising, since adults are presumed to be capable and not in need of state protection. See *In re E.G.*, 133 Ill. 2d 98, 111 (1989) ("The State's *parens patriae* power pertaining to minors

is strongest with the minor is immature and thus incompetent (lacking in capacity) to make these decisions on her own. The *parens patriae* authority fades, however, as the minor gets older and disappears upon her reaching adulthood."); see also *J.H. v. Ada S. McKinley Community Services*, 369 Ill. App. 3d 803, 811 (2006) (reversing *sua sponte* appointment of a guardian *ad litem* for adults, since "[t]he trial court had no inherent power to appoint a guardian *ad litem* for the competent adult plaintiffs under the doctrine of *parens patriae* because competent adults are not wards of the court and never can be.").

¶ 39    In suggesting that the circuit court retained equitable power to consider the amended petition despite her having reached 18 years of age, Karla argues: "although Illinois law generally deems youth 18 and over of legal age * * * the State has also recognized the need to extend the protections afforded children to individuals over the age of 17 in certain circumstances." For example, Karla points out that a "child" for purposes of the child support provision of the Illinois Marriage and Dissolution of Marriage Act includes "any child age 19 or younger who is still attending high school" (750 ILCS 5/505(a) (West 2020) and that a wardship under the Juvenile Court Act of 1987 automatically terminates at age 19 but may be extended or reinstated until the minor reaches 21 years of age. 705 ILCS 405/2-31, 2-33 (West 2020); see also 705 ILCS 405/1-3 (defining a "minor" under the Juvenile Court Act of 1987 as a "person under the age of 21 years subject to this Act.").

¶ 40    While we recognize that the legislature has extended protections to persons over 18 in certain circumstances, those statutes do not impact the question of whether the trial court had jurisdiction, as an exercise of its inherent equitable power, to award a guardianship for an 18-year-old. Simply put, no statute can alter the common law equitable power to appoint a guardian of a minor. *In re M.M.*, 156 Ill. 2d at 63 (recognizing the circuit court's "inherent plenary power to appoint

guardians of minors independent of any authority given to the courts by the legislature. [Citations.]")

¶ 41    Karla's brief does not point to any Illinois precedent permitting exercise of its equitable power in circumstances similar to her. However, she urges that we should follow the reasoning of the Supreme Judicial Court of Massachusetts in *Recinos v. Escobar*, 473 Mass. 734 (2016), which held that a probate court had equitable jurisdiction to consider complaints filed by persons aged 18 to 21 who seeking findings to make them eligible for SIJ status.

¶ 42    The *Recinos* plaintiff was a twenty-year-old immigrant who filed a complaint in equity in the Massachusetts Probate and Family Court (probate court), requesting "a decree of special findings and rulings of law concerning the findings necessary to apply for SIJ status." *Id.* at 735. The plaintiff alleged that she came to the United States from El Salvador at the age of seventeen in order to escape an abusive father and gang violence. *Id.* at 736. The probate court dismissed the complaint on the ground that "plaintiff was over the age of eighteen and * * *, therefore, the court did not have jurisdiction over her." *Id.* at 735. After plaintiff appealed, the Supreme Judicial Court of Massachusetts took the appeal on its own motion.

¶ 43    The Supreme Judicial Court of Massachusetts identified the primary issue as whether the probate court "has jurisdiction pursuant to its broad equity powers under G.L. c. 215, §6, over immigrant youth between the ages of eighteen and twenty-one to entertain a request to make the necessary predicate special findings under 8 U.S.C. § 1101(a)(27)(J)." The court proceeded to conclude that the probate court "has jurisdiction, under its broad equity power, over youth between the ages of eighteen and twenty-one for the specific purpose of making the special findings necessary to apply for SIJ status." *Id.* at 739.

¶ 44    The court recognized that, by statute, the probate court had "jurisdiction over children who are under the age of eighteen." *Id.* The Supreme Judicial Court of Massachusetts recognized that because "[t]he portion of the INA concerning SIJ status provided relief for immigrant children until age twenty-one," there was "a gap between access to our State courts and the Federal statutory relief." *Id.* The *Recinos* court observed that many states have a "jurisdictional age limit of eighteen for access to their juvenile courts," and that in response to the "gap" created by federal law regarding SIJ status, certain states had enacted legislation to extend juvenile courts' jurisdiction to persons up to the age of twenty-one. *Id.* at 740.

¶ 45    Although Massachusetts had not enacted such legislation, the *Recinos* court noted that the probate court had "broad equitable powers pursuant to [chapter 215, section 6 of the General Laws of Massachusetts] and the court may invoke its equitable power to fill in this gap." *Id.* at 740; G.L. c. 215 § 6 (providing that the probate court has jurisdiction of "matters of equity cognizable under the general principles of equity jurisprudence and * * * shall be courts of general equity jurisdiction.").

¶ 46    The *Recinos* court proceeded to recognize that " 'A court with equity jurisdiction has broad and flexible power to fashion remedies' " and that "equity will not suffer a wrong to be without a remedy. [Citation.]" *Id.* at 740-41. The Supreme Judicial Court of Massachusetts court stated that, in that case, "the wrong is the abuse, neglect, or abandonment immigrant children under the age of twenty-one suffer" from their parents' actions, and recognized that, "[a]s a policy, [Massachusetts] seeks to protect children from wrongs that result 'from the absence, inability, inadequate or destructive behavior of parents.' [Citation.]" *Id.* at 741.

¶ 47    The *Recinos* court proceeded to conclude that the probate court had equitable jurisdiction to consider the plaintiff's request for findings to make her eligible for SIJ status:

"The wrongs from which this policy seeks to protect [Massachusetts's] children are the same as the wrongs that SIJ status attempts to remedy. Congress created this remedy by amending the INA to create a pathway to citizenship for immigrant children under the age of twenty-one who have suffered abuse, neglect, or abandonment by one or both of their parents. In order to obtain this remedy, a State court must make the necessary findings before the immigrant youth can apply for SIJ status. According to general principles of equity, if the [probate court] does not exercise jurisdiction over the plaintiff, she, as well as any other immigrant child between the ages of eighteen and twenty-one in [Massachusetts], will have suffered a wrong with no available remedy. Such claims fall within the general principles of equity, and therefore, the [probate court] may for purposes of the Federal status, exercise jurisdiction over immigrant children up to the age of twenty-one wo claim to have been abused, abandoned or neglected."

*Id.* at 741.

¶ 48    Karla urges that we should follow *Recinos* because "Illinois, like Massachusetts, seeks to protect children from wrongs" inflicted by their parents, such that "[e]quity demands that [Karla] be able to seek" SIJ findings in the circuit court.

¶ 49    Although we certainly acknowledge the equitable concern for protecting children, we do not find that *Recinos* controls. *Recinos* is procedurally distinct, insofar as it concerned an appeal from dismissal of a complaint seeking "a decree of special findings and rulings of law concerning the

findings necessary to apply for SIJ status." *Id.* at 735. There is no indication that the *Recinos* plaintiff sought appointment of a guardian. Thus, unlike *Recinos*, the jurisdiction question in this appeal is whether the circuit court had the power to consider a petition seeking guardianship for an 18-year-old, *i.e.*, someone who was no longer a "minor" under the Probate Act.

¶ 50        Further, whereas *Recinos* found jurisdiction pursuant to a Massachusetts statute that broadly provided the probate court with jurisdiction over all cases and matters of equity, *id.* at 740, we find no analogous basis in Illinois law to suggest that the circuit court has equitable jurisdiction to hear a guardianship petition for someone who is no longer a minor. We reiterate that the Probate Act states that a minor is someone who has not yet reached age 18; there is no indication that the Act contemplates guardianship to be granted retroactively for an older individual. Nor have we seen any Illinois case law suggesting that the circuit court's common law guardianship power extends to such circumstances. Our supreme court has recognized that "the circuit court possesses the 'inherent plenary power to appoint guardians of minors independent of any authority given to the courts by the legislature.' " *In re S.G.*, 175 Ill. 2d 471 (1997) (quoting *In re M.M.*, 156 Ill. 2d at 63). Nevertheless, we are not aware of any precedent suggesting that this common law power enables the circuit court to ignore the legislature's definition of who is a "minor."

¶ 51        To the contrary, supreme court precedent (albeit discussing the Juvenile Court Act rather than the Probate Act) has "rejected a broad construction of the inherent guardianship powers our courts possess." *In re S.G.*, 175 Ill.2d at 489 (citing *In re M.M.*,156 Ill.2d 53). Similarly, our supreme court has held that the circuit court's inherent common law authority does *not* permit it to act in contravention of a statute. See *In re S.G.*, 175 Ill.2d at 488-89 ("This court has also rejected the State's contention that because the Juvenile Court Act is merely a codification of our court's

inherent *parens patriae* authority, a circuit court retains its equitable powers and may exercise them in contravention of the statute." (citing *People ex. rel. Carey v. White*, 65 Ill. 2d 193 (1976)).

¶ 52    *In re M.M.* illustrates this principle. In that case, our supreme court addressed "whether the juvenile court, pursuant to the Juvenile Court Act, may condition the court-appointed guardian's power to consent to adoption." 156 Ill.2d at 63. Our supreme court recognized the circuit court's "inherent plenary power to appoint guardians of minors" *id.*, yet held that, insofar as the authority to appoint a guardian *with the right to consent to adoption* was derived from the Juvenile Court Act, the circuit court could not add conditions in derogation of that statute:

> "The language of the Juvenile Court Act is clear and unambiguous. It provides only, that the court shall empower the guardian to consent to adoption. In the absence of a legislative grant, we are powerless to construe the Act as permitting the juvenile court to condition, or otherwise infringe, that authority. Moreover, a contrary reading of the Act creates the potential for the juvenile court, proceeding in the name of the best interests of the child mandate, to impose any number and character of conditions on the guardian's power to consent." *Id.* at 69.

Thus, our supreme court has warned that "a [circuit] court may not seize upon 'the best interest of the child mandate' to enlarge its statutory powers." *In re S.G.*, 175 Ill. 2d at 489 (quoting *In re M.M.*, 156 Ill. 2d at 69-70).

¶ 53    Although *In re M.M.* and *In re S.G.* discussed the Juvenile Court Act, the supreme court's reasoning persuades us that the circuit court lacked power to entertain the amended petition to appoint a guardian after Karla had turned 18 years of age, which essentially asked the circuit court

to enlarge its statutory powers. The Probate Act empowers the court to appoint a guardian for a minor, and defines a minor as someone who has not yet reached age 18. Supreme court precedent instructs that we should defer to the legislature on this topic. See *In re S.G.*, 175 Ill. 2d at 490 ("The initial responsibility for setting public policy relating to the care and custody of minors rests with the legislative branch of government.").

¶ 54    We are not without sympathy for Karla and others under similar circumstances, but this court cannot ignore the Probate Act, which (as the trial court correctly recognized) simply does not contemplate the relief Karla seeks. Rather, it is for the legislature to take action if it wishes to address this issue and expand the definition of "minor" for purposes of enabling persons aged 18 to 21 to obtain SIJ status. Until the legislature takes such action, the circuit court is not empowered to grant the relief sought by Karla's amended petition.

¶ 55    In sum, the circuit court lacked jurisdiction to consider the amended petition to appoint a guardian because it was filed after Karla's was no longer a "minor." As it had not power to rule on the amended petition, the circuit's order denying the amended petition on the merits was void, as was the subsequent order denying the motion to reconsider that denial. See *In re Estate of Steinfeld*, 158 Ill.2d 1, 12 (1994) ("A void order or judgment is one entered by a court without jurisdiction * * * or by a court that lacks the inherent power to make or enter the order involved. [Citations.]"). In turn, this court cannot consider the merits of Karla's arguments. See *Flowers*, 208 Ill. 2d at 307 (where circuit court had no jurisdiction, the appellate court "had no authority to consider the merits of [the] appeal" and "should simply have vacated the circuit court's judgment and dismissed Flowers' appeal"). Accordingly, we must vacate the circuit court's orders regarding the amended petition and dismiss the appeal.

¶ 56                                                CONCLUSION

¶ 57        For the foregoing reasons, we vacate the circuit court's August 18, 2020 order denying the

amended petition, as well as the November 30, 2020 order denying the motion to reconsider, as

void.

¶ 58    Appeal dismissed.